# EXHIBIT E

1

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| ORIGINAL INCIDENT<br>REPORT | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

| | WORK UNIT<br>MSP 2ND DISTRICT HEADQUA | COUNTY<br>Wayne | |
|---|---|---|---|
| COMPLAINANT<br>GIBRALTAR POLICE DEPARTMENT | | TELEPHONE NO.<br>(734)676-5229 | |
| ADDRESS: STREET AND NO.<br>29450 MUNRO STREET | CITY<br>GIBRALTAR | STATE<br>MI | ZIP CODE<br>48173- |
| INCIDENT STATUS<br>Open | | | |

# ASSIST GIBRALTAR PD

**INFORMATION:**

I was contacted by D/ Lt. Smiley on 4-16-15 at approximately 0710 hours regarding responding to Gibraltar PD regarding a subject who was tasered by a Gibraltar police officer and died shortly there after while still in their custody.

The below information contains the material and statements gathered during our investigation into this matter.

**VENUE:**

WAYNE COUNTY , GIBRALTER
14680 GIBRALTAR
APT #16

**DATE & TIME:**

THU, APR 16, 2015

**COMPLAINANT:**

NAME: GIBRALTAR POLICE DEPARTMENT - CHIEF LARRY WILLIAMS
        GOVERNMENT
ADDRESS:
        29450 MUNRO STREET
        GIBRALTAR, MI 48173
PHONE:
        BU: (734)676-5229
        FX: (734)676-5124

**ARRIVAL AT GIBRALTAR PD:**

As we walked into the PD, it was pointed out to us that the victim of this incident was currently being held in what appeared to be the PD's interview room.

Upon my initial arrival to Gibraltar PD, D/Lt. Smiley and I met with Chief Larry Williams. He indicated that on 3-16-15 at approximately 0320 hours one of his officers (later identified as Ofc Gary Robinson) and a Rockwood police officer responded to the above venue for a sexual assault in progress. Continuing, the Chief explained that upon the officers arriving at the venue they observed a sexual assault in progress. A taser deployment occurred by his officer, and he stated he thought the Rockwood officer also deployed his taser at some point as well. A short time after the taser deployments the below listed suspect became unresponsive.

| PAGE<br>1 of 12 | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|

1

| 2 | | | |
|---|---|---|---|
| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | | INCIDENT NO.<br>020-0000789-15 (DB) |
| **ORIGINAL INCIDENT**<br>**REPORT** | TIME RECEIVED<br>1128 | | FILE CLASS<br>11001 |

The chief advised that the officers then radioed for medical personnel and began first aid/ CPR on the suspect until being transported to Oakwood Southshore Hospital in Trenton. As we spoke further, the Chief indicated that the victim of the sexual assault was currently in his department's interview room. (It should be noted that as we walked into the PD, it was pointed out to us that the victim was sitting in the department's interview room).

The Chief did explain that after 0300 hours his department only has one officer on duty, therefore if a call for service is received that would require two officers, Gibraltar PD then requests assistance from neighboring police agencies.

As our conversation with the Chief was ending we became aware that the victim was having some discomfort. Medical personnel was then summoned to the PD for the victim. Prior to the victim leaving, I briefly met with her and advised that I would meet her at the hospital and discuss this issue further with her.

**VICTIM:**
NAM: CHRISTINA LOUISE BENETEAU

| | | | |
|---|---|---|---|
| | | RAC: W | ETH: U |
| NBR: 14680    DIR: | | SEX: F | OPS: MI/B530115549096 |
| STR: MIDDLE GIBRALTAR | | DOB: 02/05/1971 | SSN: |
| SFX: ROAD | APT/SUITE: 16 | HGT: 5'04" | SID: |
| CTY: GIBRALTAR | ST: MI | WGT: 150 | FBI: |
| TXH: | ZIP: 48173 | HAI: BRO | MNU: |
| TXW: | | EYE: BRO | PRN: |
| MB: (734)799-6981 | | | |

**INTERVIEW VICTIM:**
I conducted an interview with the victim while she was at the Oakwood Southshore Hospital in Trenton. The interview took place in room 27 of the ER area at approximately 0950 hours. Below is a summary of what was discussed during the interview.

I asked Christina to provide me with background information on both herself and David, who is also her boyfriend and suspect. Christina stated that she is still legally married to Michael Thomas Beneteau u/m 4-1-66, of Hubbell, MI, however he does not take part in much of her or her children's lives right now. She said that she last spoke with Michael a few days prior to this incident. Christina explained that she has been diagnosed with bi-polar disorder, ADD/ADHD, anxiety, borderline personality disorder, and that's all she could remember at that time. She indicated that she is also currently taking the following medications: Wellbutrin, Depakote, Klonopin, Trazodone, Aderall, and Percocet. When I asked how she supports herself, she indicated that she is going to school and just received a student loan check, other than that check she had no other means of income. Christina did say that David assisted her with her bills since the time they had met.

She explained she met David on October 17, 2014 at a local drug store. She stated David lives with mother, Carolyn, in Southgate, however he often stayed at her place. According to Christina, the suspect has had numerous mental episodes, which she did not elaborate on. She also said that he had been diagnosed with Bi-polar disorder, extreme anxiety, and had numerous suicide attempts. He was taking many medications including Seroquel (50mg), Prilosec, Vicodin, Narco (10mg,5 times daily), and he was supposed to be on

| | INVESTIGATED BY<br>D/SGT ROTI | | REPORTED BY | REVIEWED BY |
|---|---|---|---|---|
| PAGE<br>2 of  12 | | | | |

3

**Michigan Department of State Police**

**ORIGINAL INCIDENT REPORT**

| | |
|---|---|
| ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
| TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

Lithium. Christina said that David's doctor was Dr. Gamble out of Southgate. She also stated the suspect was currently unemployed and got his money from being on social security disability.

After getting some background information on both the suspect and victim, I asked Christina to take me through the events leading up to the police getting called to her apartment. Christina indicated that her two children (son -Angelo Beneteau w/m 2-6-03, daughter - Alice Beneteau w/f 5-26-05), David and herself ordered pizza around 1930 hours on the evening of 4-15-15. At approximately 2045-2100 hrs Alice took her medications and went to bed. At approximately 2200-2230 hours Angelo goes to bed in his bedroom.

Christina indicated her two children have their own rooms, and she generally sleep in the reclining love seat she has in living room. She also indicated that when David stays at her apartment they will often sleep together on the futon that is also in her living room. On the night of 4-15-15 Christina said she fell asleep on the futon around 2245 hrs and David sleep on the reclining love seat. She indicated that she had fallen asleep before David on this night.

Christina said that she awoke to David moaning and flailing his arms, as if he was having a bad dream. According to her it appeared that David was in some kind of distress. She stated this is not an uncommon thing for David. On this occasion, as she normally does, she went over to David and gently rubbed his chest with her hand while also calling his name in order to awake him from his distress. She explained the odd thing about this episode was the fact David was in the chair wearing only a t-shirt and no pants. Christina said that David normally sleep in his underwear and shirt or just his underwear.

Almost immediately after attempting to awake David, David grabbed the back of Christina's head and shoved it into his groin area. David started making statements like....."get it bitch, slut, whore, you're the best." Christina indicated she began to perform oral sex on David. She said that when this first started he was not aroused, but quickly David became aroused. Christina stated that David was acting out of control. He grabbed a 2-liter bottle of pop took a drink and then threw the bottle across the room. David then began to drag Christina all over the living room area. At one point she ended up on the futon. During this incident she continued to perform oral sex on the David. Christina explained that David was being so aggressive that she continued to gag and regurgitate her food while performing oral sex. She indicated that she had never seen David act this way before. (It should be noted that earlier in our conversation, Christina indicated that David would often tell her there was a side of him that she had never seen.) At some point during this incident, Christina thought is was while they were on the futon, David put his finger(s) in her anus, causing her pain.

Due to the noise from this incident, Christina's son Angelo awoke and came out into the living room. Angelo then confronted the suspect, by asking....what are you doing? A short time later Christina's daughter awoke and also confronted the suspect by saying.......what are you doing? Christina said that she pointed the kids back to their rooms so David would not do anything to them. She also said she told the kicks to get back in their rooms. One thing she remembers as being very disturbing was when her daughter came out into the living room, and David made the comment....."she is another cute one."

I asked her if she was scared during this incident and she said....."yes, I was scared"....in a strong tone. She told me that during this entire incident David was saying, " I am gonna kill you bitch," and " if you don't do it right I am gonna kill you." I then asked her what her mindset was while this incident was occurring. Christina

| | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>3 of 12 | | | |

3

| | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| **Michigan Department of State Police** | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **ORIGINAL INCIDENT REPORT** | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

explained that she thought if she could get David to "finish," then things would settle down and his out of control behavior would stop. After the kids had went back to their rooms, Christina said she heard her son banging on his door. A few moments later David started walking down the hallway toward the kids bedrooms saying......"where's my nigga." Christina said that David was referring to her son. She also said that David was completely naked as well.

Christina explained that David then pushed open the Angelo's bedroom door. He then pushed Angelo down on the bed, and according to Christina jumped on her son's head, keeping his knee and shin on Angelo's head and neck area. Christina then pushed David off of Angelo at which time Angelo ran out of the bedroom.

Christina said both she and David were now on Angelo's bed and she continued to perform oral sex on David. At one point while they were in the bedroom, Christina told David she had to "shit" as she explained to me that she felt some kind of discharge coming from her anus. She then went into the bathroom and David followed. While in the bathroom David began to become very apologetic saying he was sorry for what had happened. After being in the bathroom, both Christina and David ended up back in Angelo's bedroom. Christina explained that David was now laying on his side and she was almost perpendicular to him, again performing oral sex on him. She stated that David did have his legs wrapped around her head/ neck area while they were in this position. She said it was a submissive position. It was a short time later Christina said the police arrived in the room.

Christina said she hear the police kick the door open, and instruct David to get off of her. Christina stated she heard the officers instruct David 2 times to get off of her. She also said the officers gave David time to comply prior to deploying the first taser. She said that after the first taser deployment the suspect was still on top of her, she then heard the officers briefly speaking with one another and then the sound of the second taser deployment. Christina indicate David then fell to the floor on his back.

After the suspect was on the ground, Christina remembers being asked to leave the room. She then moved to and stood by the bedroom door. She indicated that she remembers the officers winding up their tasers. When I asked if she observed the officers performing first aid/ CPR she stated she did not see them providing any medical care. She also indicated that a short time later she went to the kitchen area to attend to her kids. When I asked if she observed the officers the entire time they were in her apartment she said no. I asked if it was possible if the officers could have rendered first aid/ CPR when she was in the kitchen area she stated yes they could have. Christina said she was in the kitchen area when EMS arrived on scene. (It should be noted that if one was to stand in the kitchen there is no line of site into the bedroom in which this incident occurred. If one was to take one or two steps out of the kitchen area and into the living room there is a small line of site directly into the bedroom where this occurred. This line of site is only viewable from a small area just outside of the kitchen.)

During my initial conversation with Christina she indicated that she witnessed David being taken away in the ambulance, however she recontacted me on 4-16-15 at approximately 0546 hours and informed me that she was whisked away immediately and she did not see David leave the scene with the EMS/ ambulance personnel. Also during our first conversation at the hospital she said after David was taken away all police and EMS personnel left, without anyone speaking with her. She then explained a police officer or detective would stop by the apartment, then leave for a short period of time, and then return. She said this continued a few

| PAGE<br>4 of 12 | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| **Michigan Department of State Police** | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **ORIGINAL INCIDENT REPORT** | TIME RECEIVED | FILE CLASS |
| | 1128 | 11001 |

times. It should be noted that Christina could not remember how she and her children had gotten to Gibralter PD. Christina did say after this incident and prior to going to the police station she was able to clean up the fecal matter that was near her son's bedroom.

During my interview at the hospital I explained to Christina the importance of having a sexual assault kit completed, which included the importance of being more thoroughly examined for medical injuries and diseases. Christina agreed to have a sexual assault completed. Arraignments were made in conjunction with FirstStep to have Christina transported to the WCSAFE facility located at 12701 Telegraph Rd Suite #204, Taylor, MI 48180 (313)-430-8000 where the sexual assault kit was to be completed. Upon completing my interview and with my understanding Christina was waiting for her transportation to WCSAFE, I cleared the hospital and responded to the Christina's apartment.

While at the apartment I received information that Christina had yet to arrive at the WCSAFE facility, and was indicating she would not be having a sexual kit completed. I responded back to the hospital where I found Christina still waiting for her ride. I asked if she was still willing to have a sexual assault kit completed and she now stated she was not going to have a sexual assault kit done. I again explained to her the importance of having a more thorough exam performed for your own health and safety. She again explained that she was not going to have the kit completed. Christina said she was not going to have any evidence indicating she was injured. I asked why we would need evidence if the suspect (David) was deceased. She then stated that if this ever goes to court she did not want us having any evidence. I again asked why we would need evidence if the suspect was now deceased. Christina again indicated that........if hypothetically this goes to court down the road there would be no evidence of her being violated. I again advised her of the importance for her to have a more thorough medical exam for her own safety, and this would provide for a more complete investigation into this entire incident.

**INJURIES:**
Initially, I could not visibly observe any injuries Christina. However, I did observe when the victim moved around, whether she was seated or walking, she moved slowly and cautiously as if she was in pain or discomfort. While at the hospital I observed the nursing staff give the victim what she called Vicodin for the pain she was in. A later check of the victim by the nursing staff it was asked of the victim on a scale of 1 to 10 what her pain level was and the victim stated it was a 7, and that was after being at the hospital for approximately 2 hrs.

When I met with the victim at the hospital a second time, under her right eye I observed a reddish purple colored mark (what appeared to be a bruising mark - black eye)

**SUSPECT - DECEASED:**
NAM: DAVID MICHAEL KAPUSCINSKI

| | | RAC: W | ETH: U |
|---|---|---|---|
| NBR: 14843 DIR: | | SEX: M | OPS: MI/K125135603542 |
| STR: FAIRGROVE | | DOB: 07/08/1975 | SSN |
| SFX: ROAD | | HGT: 5'09" | SID |
| CTY: SOUTHGATE | ST: MI | WGT: 155 | FBI: |
| TXH: | ZIP: 48195 | HAI: XXX | MNU: |
| TXW: | | EYE: HAZ | PRN: |

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 5 of 12 | D/SGT ROTI | | |

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| ORIGINAL INCIDENT<br>REPORT | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

**MEDICAL EXAMINER OFFICE:**
Wayne Co Medical Examiner complaint # 15-4606.

On 4-22-15 I spoke with investigator Olsen of the Wayne Co Medical Examiner's Officer. He had conferred with Dr. Hudson who was the medical examiner who performed the autopsy. It was explained to me that preliminary indications were the following: 1) there was no outward reason for the suspect's death, and 2) a complete toxicology report would be needed in order to provide for a more thorough and conclusive explanation/ cause of death.

**REVIEW OF ROCKWOOD PD IN-CAR AUDIO/ VIDEO:**
The below is a summary of events that can be heard on the audio portion of Ofc Mitchell's body microphone. The entire recording lasts approximately 1 hour and 18 mins. The times listed are taken from recording and do NOT represent the actual time of day. The time refers time mark within the total video duration.

1) 3min 30secs into audio, screaming can be heard in the background. Ofcs then can be heard confronting situation seconds later
2) Ofcs can he heard giving multiple loud verbal commands to suspect "get off of her" and "get off of her now" at least 7 times.
3) 3min 55 secs into audo, a taser deployment can be heard, with loud verbal direction being given by Ofcs.
4) 4min 12sec into audio, second taser deployment can be heard.
5) 10min 10secs, Ofcs can be heard - doesn't look like he is breathing.
6) 10min 12 secs, Ofcs can be heard - still has pulse.
7) 12min 30secs, Ofcs can be heard doing CPR.
8) 16min 19secs, an AED is heard talking.
9) 17min 07secs, a AED shock is administered.
10) 19min 15secs - mic off
11) 22min 37secs - mic on, Ofcs speaking with victim.
12) 23min 59secs, someone (believed to be neighbor - Patricia Host) says thanks for coming and that she called the police.
13) 29min 15sec, Ofcs can be heard interviewing Patricia Host, provides good information as to what she was hearing.
14) 32min 05secs, Victim states suspect threatened son, Ofcs speaking with victim.
15) 34min 08secs - mic off.
16) 34min 33secs - mic on, Ofcs speaking with daughter (Alice), stated they were fighting.
17) 36min 30secs, Ambulances are seen leaving the scene.
18) 37min 22secs - mic off.
19) 37min 38secs - mic on.
20) 37min 57secs, Ofcs interview son (Angelo), stated woke up to yelling, and he called police from downstairs.
21) 40min 26secs - mic off.
22) 40min 41secs - mic on.
23) 47min 05secs - mic off.
24) 1hr 55secs - mic on.

| PAGE<br>6 of 12 | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|

7

| Michigan Department of State Police | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **ORIGINAL INCIDENT REPORT** | TIME RECEIVED | FILE CLASS |
| | 1128 | 11001 |

25)  1hr 1min 50secs, Ofcs speak with victim.......victim provides information at to what happened
26)  1hr 15mins 01secs - mic off.
27)  1hr 17mins, Rockwood Ofc Mitchell departs the scene.
28)  1hr 18mins in car video ends.

## REVIEW OF GIBRALTAR E911 CALL:
Below is a summary of information obtained from the audio E911 call to Gibraltar PD.

-Angelo is 12 year old caller.
-Angelo indicates mom's boyfriend is freaking out.
-Angelo is heard crying.
-Angelo states mom and sister are still in apartment.
-Angelo says he is awoken by fighting.
-Dispatch is heard dispatching officer to domestic in progress.

## REVIEW OF ROCKWOOD PD RADIO COMMUNICATIONS:
Below is a summary of information obtained from the audio Rockwood PD dispatch

-14680 Gilbraltar.
-Station 15 to Station 11 asking for assistance.
-Someone asking for another car.
-Advising taser was deployed.
-Advising secure.
-Asking for rescue.
-2 from rescue reponding.
-Asking for Brownstown rescue.
-Advising CPR being performed.
-Requesting rescue to step it up.
-Advising to step it up, CPR in progress.
-Advising CPR in progress.
-Advising CPR in progress.

## WITNESS/ GIBRALTAR OFFICER:
NAM: GARY ROBINSON

| | | |
|---|---|---|
| NBR: 29450    DIR: | RAC: W | ETH: U |
| STR: MUNRO | SEX: M | OPS: |
| SFX: STREET | DOB: 11/03/1983 | SSN: |
| CTY: ROCKWOOD          ST: MI | HGT: | SID: |
| TXH:                                ZIP: 48173 | WGT: | FBI: |
| TXW: | HAI: | MNU: |
| CT: (734)676-1022 | EYE: | PRN: |

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 7 of 12 | D/SGT ROTI | | |

7

8

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| ORIGINAL INCIDENT<br>REPORT | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

## INTERVIEW OFFICER ROBINSON:

Officer Robinson came to 2nd District Headquarters on 4-20-15 at approximately 1430 hrs for a voluntary interview regarding this incident. Officer Robinson was accompanied by attorney Thomas Zulch. Officer Robinson was interviewed immediately after completing my interview with Officer Mitchell. Below is a summary of the interview.

Prior to starting the interview I acknowledged Officer Robinson's willingness and thanked him for volunteering to meet with me regarding this incident. I started the interview by asking Officer Robinson if he could take me through this incident from start to finish.

Officer Robinson stated that he had met up with Officer Mitchell of Rockwood PD when he was dispatched to a domestic. Since he was speaking with Officer Mitchell, and it is common practice for Rockwood PD officers to respond as backup units for Gibraltar PD and vice versa, he asked Officer Mitchell to respond with him as back up. He also indicated that he had received information that the subject calling was a child.

A short time after receiving the call both officers arrived on scene. Officer Robinson stated they met a young boy at the apartment entrance and he only responded about half way up the stairs because he appeared to be afraid. Once at the apartment door they were greeted by a young female child. Officer then asked the little girl where her parents were and she motioned toward the back of the apartment. As the officers approached the back bedroom area Officer Robinson said that he could hear groaning noises coming from the room. When they entered the room he stated he saw a naked man lying on the bed facing him with a female wearing only a t-shirt. Officer Robinson observed the suspect (later identified as David Kapuscinski) with his legs wrapped around the females head/ neck area. It appeared to Officer Robinson the female was struggling to breathe. Officer Robinson indicated the suspect was continuously making the statement that...."I'm going to kill her" and had what he described as a crazed look on his face. Officer Robinson indicated the suspect was not letting the victim go even after give him commands to do so. It should be noted that when Officer Robinson entered the room he noticed fecal matter scattered about the room. After the suspect refused to let the victim go Ofc Robinson tasered the suspect, which separated the suspect from the victim. The suspect appeared to be trying to get back up and Officer Robinson attempted to taser the suspect again, however there was no reaction from the suspect. It was at that point Officer Mitchell tasered the suspect putting the suspect down on the floor. Once the suspect was on the floor Officer Robinson was able to secure the suspect in handcuffs. After securing the suspect, Officer Robinson tried to obtain information from the suspect but was not getting any responses. Officer Robinson placed the suspect into the "recovery" position, and applied a sternum rub in an attempt to get the suspect to wake up. The suspect was not responding to the sternum rub which according to Officer Robinson works in getting the attention of people. Due to the lack of response from the suspect  both officers began to examine the suspect further. Officer Robinson stated he checked the suspect for a pulse and found one, however due to not having a rescue breathing mask he was unable to perform rescue breaths. (Officer Robinson noted the poor condition of the room and the fecal matter scattered throughout as a concern with performing rescue breathing without the proper equipment.) It was at this point Officer Mitchell went to his patrol vehicle to retrieve his rescue mask. While Officer Mitchell was retrieving his rescue mask Officer Robinson began CPR. Upon Officer Mitchells return he joined in the CPR process by administering breaths to the suspect. It should be noted that Officer Robinson indicated that medical rescue had been contacted moments after the taser deployment. When Officer Robinson realized the seriousness of the situation he contacted dispatch requesting Brownstown medical rescue. He explained the reason for contacting

| | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>8 of 12 | | | |

8

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| ORIGINAL INCIDENT<br>REPORT | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

Brownstown was they were a full time rescue department and Gibraltar was a volunteer unit, thus possibly taking more time to respond. Upon medical rescue personnel arriving Officer Robinson and Mitchell turned over medical care to them. Officer Robinson indicated that when advanced medical personnel arrived they brought with them an AED, which they used on the suspect.

Officer Robinson stated that after dealing with the suspect he spoke with the victim and both children. He stated that the victim told him the suspect was having a nightmare and when she attempted to wake him up he awoke and immediately became sexually violent with her. She explained to him that the suspect shoved his penis down her throat causing her throw up approximately 3 times. The victim then explained she and the suspect ended up in the bathroom where the suspect started to cry as if he was apologizing. The suspect then became violent again and pushed/pulled the victim into the back bedroom, which is where Officer Robinson found both parties. The victim indicated to Officer Robinson that her son was punched once or twice, and the suspect knelt on her son's head/neck. When Officer Robinson questioned the victim further about the assault on her son, he indicated that the victim just brushed it off as not a big deal. Officer Robinson then asked about the fecal matter in the bedroom and that is when she advised him the suspect put both of his hands in her anus and pulled the fecal matter out. She explained that when the officers arrived the suspect was choking her. She also indicated the suspect was not welcome to do the things that he was doing to her. Officer Robinson said one thing that struck him as odd during this incident was how calm the victim remained during the entire process. When I asked about any injuries on the victim, Officer Robinson said the victim had a couple of bruises on her face, to which he asked her about. The victim stated she may have been punched a couple of times.

Officer Robinson said that the kids heard yelling and screaming. The daughter stated the suspect kept on calling her mom the "b-word." The son stated that he may have been struck. All three seemed to be very concerned about the possibility of the suspect going to jail.

I asked Officer Robinson if he went to the venue with the intentions of hurting the suspect in any way and he stated, no. I then asked if he felt if he handled the situation appropriately and he stated, yes. Officer Robinson indicated to me that he felt that he doesn't think there was anything else he could have done differently.

## WITNESS/ ROCKWOOD OFFICER:
NAM: NICHOLAS BILL MITCHELL

| | | |
|---|---|---|
| NBR: 32409   DIR: | RAC: W | ETH: |
| STR: FORT | SEX: M | OPS: MI/M324630089562 |
| SFX: ROAD | DOB: 07/16/1989 | SSN: |
| CTY: ROCKWOOD   ST: MI | HGT: 5'11" | SID: |
| TXH: | WGT: 190 | FBI: |
| TXW: (734)379-5323   ZIP: 48173 | HAI: BRO | MNU: |
| MB: (313)418-5173 | EYE: BRO | PRN: |

## INTERVIEW OFFICER MITCHELL:
I met with Officer Mitchell at 2nd District Headquarters on 4-20-15 at approximately 1430 hrs for a voluntary interview regarding this incident. Officer Mitchell was accompanied by attorney Thomas Zulch. Below is a summary of the interview.

| PAGE<br>9 of 12 | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|

10

| Michigan Department of State Police | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| ORIGINAL INCIDENT | TIME RECEIVED | FILE CLASS |
| REPORT | 1128 | 11001 |

I started by acknowledging that he came in voluntarily. I then asked if he could just take me through the time of events in regards to this incident. Officer Mitchell stated that he and Officer Robinson had met up at Carlton High School and were conversing when Officer Robinson received a dispatched call for a domestic violence in progress. He advised Officer Robinson asked if he could back him up on the domestic call, which he agreed to do. (It was indicated to me this is a common practice between Gibraltar PD and Rockwood PD as far as backing one another up on serious calls for service.)

Upon arriving at the apartment complex, they were greeted at the building door by a child who appeared upset. Ofc Mitchell said the child was too scared to take the officers to the specific apartment. Once the officers arrived at apartment #16, they were greet by a young female child who was also upset. While at the door Officer Mitchell said they could he what he described as a gasping noise. They entered the apartment and followed the gasping noise to the back bedroom. When they opened the bedroom door Officer Mitchell observed a fully nude male lying on a bed with the female victim with her head/ neck between the males thighs. It appeared to Officer Mitchell that the suspect was squeezing his legs and choking the victim. Officer Mitchell described the positioning of the suspect and victim as the "69" sexual position. While making these observations the suspect was also making statements to the effect that "I am gonna kill you," or "I am gonna kill her," or close variations of the same.

Officer Mitchell indicated Officer Robinson had given the suspect loud verbal commands with no compliance, therefore he deployed his taser, which separated the suspect and victim. The victim then ran out of the room. Officer Mitchell said that he thought one of the probes had struck the suspect in the right arm. After the first taser deployment Officer Mitchell described the look on the suspect's face as that of "pure rage" and "aggression," something he stated he has never seen is his career as being a police officer. Officer Mitchell stated there was no doubt to him that if they would have arrived 2 minutes later the victim would have been killed.

After the first taser deployment the suspect started to get up and kick at the officers. Officer Mitchell explained that he could hear Officer Robinson's taser going off again, however there was no reaction from suspect. It was at that point Officer Mitchell deployed his taser which took the suspect to the ground. Officer Robinson was then able to secure the suspect with handcuffs. Officer Mitchell immediately contacted Gibraltar dispatch requesting an ambulance. After taking the suspect into custody both Officer Robinson and Mitchell began to monitor the suspect. As the officers started to observe the condition of the suspect deteriorate Officer Mitchell responded to his vehicle to retrieve a CPR rescue mask. When he returned he observed Officer Robinson performing CPR. A short time later fire/ ambulance personnel arrived and took over medical treatment of the suspect, which included providing treatment with an AED.

Once the suspect was removed from the apartment by medical personnel both Officers Robinson and Mitchell began to investigate the domestic violence portion of this incident. Officer Mitchell explained that the victim did not appear like she was cooperating fully especially given the circumstances. He advised the victim did not seem to be really concerned about the suspect assaulting her son, nor did she elaborate much in her written statement. He said that victim commented about knowing what happens if she writes more in her statement......he will get in trouble and I don't want him to get in trouble.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 10 of 12 | D/SGT ROTI | | |

10

| 11 | | | |
|---|---|---|---|
| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) | |
| **ORIGINAL INCIDENT**<br>**REPORT** | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 | |

I asked Officer Mitchell if he felt that he handled the situation appropriately. He advised that in his opinion they could have handled this situation in one of three ways which included 1) going hands on, 2) using taser, or 3) using lethal force. Due to the totality of the circumstances (conditions of the room[fecal matter scattered throughout], actions and words of the suspect...etc) he felt that using the taser was the safest and most effective way in handling the situation. He also explained that he felt they had saved the life of the victim. Finally, I asked Officer Mitchell if he went to the venue with the intentions of harming the suspect and he stated, no.

**EVIDENCE/ PROPERTY:**
SEIZED BY: DSGT ROTI
Prop 0008 - Desc: (4) FOUR DVD'S CONTAINING THE RECORDED INTERVIEW(S) OF ANGELO BENETEAU CONDUCTED WITH D/SGT SUNSHINE PONZETTI ON 4-16-15. THE DVD'S ARE LABELED #1, #2, #3, AND #4. Type: Evidence
Descrp: (4) FOUR DVD'S CONTAINING THE RECORDED INTERVIEW(S) OF ANGELO BENETEAU CONDUCTED WITH D/SGT SUNSHINE PONZETTI ON 4-16-15. THE DVD'S ARE LABELED #1, #2, #3, AND #4.
Obtained From: 12111 TELEGRAPH RD
Taylor 48180
Wayne County At or Near:
RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

Prop 0009 - Desc: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF ALICE BENETEAU WITH D/SGT SUNSHINE PONZETTI AT THE MSP 2ND DISTRICT HEADQUATERS ON 4-16-15. Type: Evidence
Descrp: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF ALICE BENETEAU WITH D/SGT SUNSHINE PONZETTI AT THE MSP 2ND DISTRICT HEADQUATERS ON 4-16-15.
Obtained From: 12111 TELEGRAPH RD
Taylor 48180
Wayne County At or Near:
RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

Prop 0010 - Desc: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER GARY ROBINSON OF GIBRALTAR PD. THE INTERVIEW WAS CONDUCTED AT THE MSP 2ND DISTRICT HEADQUARTERS. Type: Evidence
Descrp: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER GARY ROBINSON OF GIBRALTAR PD. THE INTERVIEW WAS CONDUCTED AT THE MSP 2ND DISTRICT HEADQUARTERS.
Obtained From: 12111 TELEGRAPH RD
Taylor 48180
Wayne County At or Near:
RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

| | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>11 of 12 | | | |

12

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| ORIGINAL INCIDENT<br>REPORT | TIME RECEIVED<br>1128 | FILE CLASS<br>11001 |

Prop 0011 - Desc: ONE HAIR TAKEN OFF OF THE SUSPECT BY THE WAYNE CO MEDICAL EXAMINER DURING THE AUTOPSY THAT WAS CONDUCTED ON 4-17-15. THE HAIR WAS COLLECTED AND PACKAGED BY THE ME'S OFFICE THEN TURNED OVER TO MSP. Type: Evidence
Descrp: ONE HAIR TAKEN OFF OF THE SUSPECT BY THE WAYNE CO MEDICAL EXAMINER DURING THE AUTOPSY THAT WAS CONDUCTED ON 4-17-15. THE HAIR WAS COLLECTED AND PACKAGED BY THE ME'S OFFICE THEN TURNED OVER TO MSP.
Obtained From:
WAYNE CO MEDICAL EXAMINER'S OFFICE.

SEIZED BY: DSGT ROTI
Prop 0012 - Desc: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER MITCHELL OF ROCKWOOD PD AT MSP 2ND DISTRICT HEADQUARTERS. RECORDED ON 4-20-15 AT APPROXIMATELY 1430 HRS Type: Evidence
Descrp: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER MITCHELL OF ROCKWOOD PD AT MSP 2ND DISTRICT HEADQUARTERS. RECORDED ON 4-20-15 AT APPROXIMATELY 1430 HRS
Obtained From: 12111 TELEGRAPH RD
Taylor 48180
Wayne County At or Near:
2ND DISTRICT HEADQUARTERS

Prop 0013 - Desc: A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP AND BOTTOM). THE PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH AREA, POSSIBLY FECAL MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH COLOREDCIRCULAR STAIN ON THE BACK NEAR THE BOTTOM OF THE SHIRT, POSSIBLY FECAL MATTER. THE CLOTHING WAS COLLECTED BY OAKWOOD SOUTH SHORE HOSPITAL WHEN THE VICTIM WAS ADMITTED INTO THE ER ON 4-16-15. Type: Evidence
Descrp: A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP AND BOTTOM). THE PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH AREA, POSSIBLY FECAL MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH COLORED CIRCULAR STAIN ON THE BACK NEAR THE BOTTOM OF THE SHIRT, POSSIBLY FECAL MATTER.
Obtained From:
Trenton
Wayne County At or Near:
OBTAINED FROM OAKWOOD SOUTH SHORE HOSPITAL WHILE I WAS CONDUCTING MY INTERVIEW WITH CHRISTINA BENETEAU.

**CRIME VICTIM'S RIGHTS:**
The victim was provided CVR information.

**STATUS:**
Open

| | INVESTIGATED BY<br>D/SGT ROTI | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>12 of 12 | | | |

12

13

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0001 | SUPPLEMENTARY DATE<br>Fri, Apr 17, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS<br>Open |
|---|

# ASSIST GIBRALTAR PD

**JOURNAL:**

None.

**INFORMATION:**

On 04/16/2015, at approximately 0730hrs, I was contacted by 2nd District SIS Detective Lieutenant James Smiley and directed to respond immediately to Oakwood Southshore Hospital in Trenton, MI. to partake in an investigation involving an assist to the Gibraltar MI. Police Department.

I arrived at Oakwood Southshore Hospital at 0900hrs where I met with the OIC in this matter, D/Sgt. Patrick Roti and a short time later was joined by D/Lt. Smiley. I was instructed to go to the emergency room annex area and advised to take 35mm photos of the deceased in this incident, a David Kapuscinski, and to stay with the remains until arrangements could be made to have Mr. Kapuscinski's body turned over to the Wayne County Medical Examiners's Office.

**ACTION TAKEN:**

Upon my immediate arrival at the hospital's emergency room annex where the deceased in this matter was located, I was met by a Sergeant Matthew Lawyer, badge #15, of the Gibraltar MI. Police Department. Sergeant Lawyer advised me that he had been assigned to stay with Mr. Kapuscinski's remains by his department's supervision and that he had been back in the annex area with the deceased for a couple of hours prior to my arrival.

The deceased was located on a mobil hospital bed and clothed in what appeared to be a hospital issued gown only. The remains still had what appeared to be IV's and wires connected to different parts of the body. I inquired of hospital staff as to where the deceased's clothing could be located, so they could be secured for examination and I was advised that he arrived at the hospital via ambulance without clothing on his person.

**PHOTOGRAPHS:**

As directed, I commenced taking 35mm photographs of the deceased at 0910hrs using the department issued 35mm Canon Rebel camera that had been assigned to D/Sgt. Roti. Throughout the course of taking photographs, I was intermittently assisted in positioning the deceased by Sergeant Lawyer who was present throughout the photographic process.

The digital photo disk was placed in an envelope and ultimately turned over to the OIC in this matter, D/Sgt. Roti.

| | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>1 of 4 | D/SGT TIMOTHY HOLME #357 | | |

13

14

**Michigan Department of State Police**

**SUPPLEMENTAL INCIDENT
REPORT 0001**

| ORIGINAL DATE | INCIDENT NO. |
|---|---|
| Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTARY DATE | FILE CLASS |
| Fri, Apr 17, 2015 | 11001 |

## CONTACT WAYNE COUNTY MEDICAL EXAMINER'S OFFICE:

After taking photographs which concluded at approximately 1000hrs, I made contact with the Wayne County Medical Office via TX and spoke to Investigator Winning (313)-833-2571. Winning advised the ME case number in this matter is 15-4606. Winning went on to say that upon being contacted by hospital staff, arrangements would then be made to have Mr. Kapuscinski's remains transported to the Medical Examiner's office in Detroit where an autopsy would be conducted the next day, 04/17/15 at 0830hrs.

At 1250hrs I was advised by Charge Nurse, Kim Gilstorf, that she had made contact with the Medical Examiner's office and that Mr. Kapuscinski's remains would be moved to the hospital's morgue pending the arrival of transport services which would be taking the deceased to the Wayne County Medical Examiner's office in Detroit. After speaking to Ms. Gilstorf, I left the hospital and proceeded to 14680 Middle Gibraltar Rd.

## ASSIST WITH APARTMENT COMPLEX CANVAS:

NAM: VICTOR MANUEL DE-LA-CERDA

NBR: 14680     DIR:
STR: MIDDLE GIBRALTAR
SFX: ROAD                    APT/SUITE: 15
CTY: ROCKWOOD         ST: MI
TXH:                               ZIP: 48173
TXW:
MB: (734)749-4104

RAC: W
SEX: M
DOB: 10/10/1969
HGT:
WGT:
HAI:
EYE:

ETH: H
OPS: MI/D426847581780
SSN:
SID:
FBI:
MNU:
PRN:

NAM: CARMEN L DE-LA-CERDA

NBR: 14680     DIR:
STR: GIBRALTAR
SFX:                             APT/SUITE: 15
CTY: ROCKWOOD         ST: MI
TXH:                               ZIP: 48173
TXW:
MB: (734)749-4108

RAC: W
SEX: F
DOB:
HGT:
WGT:
HAI:
EYE:

ETH: H
OPS: MI/D426108560308
SSN:
SID:
FBI:
MNU:
PRN:

At approximately 1300hrs I arrived at 14680 Middle Gibraltar Rd in Gibraltar MI., the venue for this report and made contact with D/Sgt's Mark Lesinski and Kathy Lewis who were already on scene. I was directed to assist with an area canvas pertaining to this incident.

I made contact at apartment # 15 at 14680 Gibraltar Rd with Victor De-La-Cerda and Carmen De-La-Cerda who reside within that apartment. Apartment #15 where the De-La-Cerda's reside is directly across the hall from apartment #16 which is the venue for this report.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 2 of 4 | D/SGT TIMOTHY HOLME #357 | | |

14

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0001 | SUPPLEMENTARY DATE<br>Fri, Apr 17, 2015 | FILE CLASS<br>11001 |

The De-La-Cerda's explained to me that they had absolutely no insight as to any problems emanating from apartment #16 where the incident in this report is to have taken place. They both advised they never heard nor observed any suspicious activity involved with apartment #16, including the early morning hours of 04/16/15 when this incident is said to have taken place. They advised that they were aware that a woman and a man lived across the hall from them in apartment #16 and that two children also resided there but they were not aware of any problems during the several or so months that the people had resided in apartment #16.

Victor stated that he did get out of bed at approximately 0300hrs on 04/16/15 and looked out of his apartment window, which faces the complex parking lot, because emergency vehicle lights had awaken him. Neither Victor nor Carmen were aware of what had transpired this date across the hall from them.

Victor went on to say that they are not personal friends with the inhabitants of apartment #16 but he advised that their kids go to the same school as his kids just up the street from their apartment building. Neither Carmen nor Victor were able to provide any additional information pertinent to this report.

## CONTACT WITH EMERGENCY ROOM DOCTOR:

NAM: MELANIE AABERG  D.O

| | | RAC: W | ETH: U |
|---|---|---|---|
| NBR: 5450 | DIR: | SEX: F | OPS: |
| STR: FORT | | DOB: | SSN: |
| SFX: STREET | | HGT: | SID: |
| CTY: TRENTON | ST: MI | WGT: | FBI: |
| TXH: | ZIP: 48183 | HAI: | MNU: |
| TXW: (734)671-3883 | | EYE: | PRN: |

On 04/17/15 at 0720hrs I made contact with Doctor Melanie Aaberg, Emergency Room Doctor, at Oakwood Southshore Hospital in Trenton MI. where the deceased in this matter, Mr. David Kapuscinski, was transported by emergency personnel.

Doctor Aaberg stated that there was not a lot that she could offer me by way of information regarding this incident because she advised that Mr. Kapuscinski, though receiving CPR from emergency personnel upon his arrival at the hospital via ambulance, was technically dead upon his arrival. Doctor Aaberg went on to say that efforts to revive him were unsuccessful and that he was officially pronounced dead at 0438hrs. The doctor stated that she was unable to determine where the laser wires had attached to Mr. Karpiscinski due to the amount of old sores and scaring that covered his torso.

The doctor went on to say that she had nothing more to offer in that no blood had been drawn for analysis and that the coroners report would assist in revealing the cause of death.

| | INVESTIGATED BY<br>D/SGT TIMOTHY HOLME #357 | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>3 of 4 | | | |

**Michigan Department of State Police**

**SUPPLEMENTAL INCIDENT REPORT 0001**

| ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|
| SUPPLEMENTARY DATE<br>Fri, Apr 17, 2015 | FILE CLASS<br>11001 |

**PROPERTY:**
SEIZED BY: TIMOTHY HOLME
Prop 0006 -  Desc: ONE CD DISK LABELED "WCMEO PHOTOS - 15-4606."  Type: Evidence
Obtained From: 1300 E WARREN AVE
Detroit MI   48207
Wayne County  At or Near:
WCMEO

**STATUS:**

Open pending further investigation.

| PAGE<br>4 of 4 | INVESTIGATED BY<br>D/SGT TIMOTHY HOLME #357 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

16

17

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
| --- | --- | --- |
| SUPPLEMENTAL INCIDENT<br>REPORT 0002 | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS |
| --- |
| Open |

## ASSIST GIBRALTAR PD

**JOURNAL:**

None

**INFORMATION:**

On 4/16/15 at approximately 07:00hrs, D/Lt. Smiley requested that I assist D/Sgt. Roti with this investigation. I responded to the Rockwood Police Department at 32409 Fort Rd. Rockwood, MI. and contacted Chief Stephen Rowe, whom had already been appraised of the investigation.

Chief Rowe said that he was aware of the incident involving Rockwood P.D. Patrolman Nicholas Mitchell and that it had stemmed from an original call of a domestic assault originating at 14680 Gibraltar Rd. in Gibraltar, MI. Chief Rowe said that it is his understanding that Patrolman Michell responded to 14680 Gibraltar Rd. at the request of Officer Robinson (Gibraltar P.D.) and that the suspect in the domestic assault complaint had been tasered and subsequently died. Chief Rowe advised that is normal practice to assist Gibratar P.D. if mutual aid is requested as both cities generally have only one, single officer car on duty for the midnight shift. Further, Rowe stated that to the best of his knowledge, mutual aid was requested pertaining to this original incident. Rowe then indicated that Lt. Randy Krause (Rockwood P.D.) could provide me with the department's taser policy, use of force policy, and radio traffic pertaining to this incident.

I spoke with Lt. Krause, whom had also been informed of this investigation and was aware of the situation. Lt. Krause provided me with the Department's taser Policy, use of force policy, and radio traffic regarding this incident (these items are recorded on CD-R and are listed as property item 1 below). The original taser download paperwork and Patrolman Mitchell's taser certification were also collected and included in this report as external documents. Further, Lt. Krause provided me with a copy the in-car audio/video recording from the vehicle operated by Patrolman Mitchell for the date of 4/16/15 (item 2 in property below). I requested to retrieve the uniform and original taser used in this incident by Patrolman Mitchell. Lt. Krause directed me to D/Sgt. Steven Mercure (Rockwood P.D.) for these items.

D/Sgt. Mercure provided me with the uniform, handcuffs, and taser used by Patrolman Mitchell this date. The Uniform and handcuffs were photographed and returned to D/Sgt. Mercure. The original taser, wires, and probes are listed as property item 3 below. Further, D/Sgt Mercure advised me that he became aware of this incident early this morning and upon Ofc. Mitchell returning to the Rockwood Police Department, Ofc. Mitchell was requested to to a Preliminary Breath Test. Mercure advises that the results of the PBT were "all zeros".

| PAGE<br>1 of 3 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
| --- | --- | --- | --- |

17

18

**Michigan Department of State Police**

**SUPPLEMENTAL INCIDENT**
**REPORT 0002**

| ORIGINAL DATE | INCIDENT NO. |
|---|---|
| Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTARY DATE | FILE CLASS |
| Mon, Apr 20, 2015 | 11001 |

**WITNESS:**

NAM: NICHOLAS BILL MITCHELL

|  |  | RAC: W | ETH: |
|---|---|---|---|
| NBR: 32409 | DIR: | SEX: M | OPS: MI/M324630089562 |
| STR: FORT |  | DOB: 07/16/1989 | SSN: |
| SFX: ROAD |  | HGT: 5'11" | SID: |
| CTY: ROCKWOOD | ST: MI | WGT: 190 | FBI: |
| TXH: | ZIP: 48173 | HAI: BRO | MNU: |
| TXW: (734)379-5323 |  | EYE: BRO | PRN: |

**INTERVIEW NICHOLAS MITCHELL:**

D/Sgt Roti interviewed Patrolman Mitchell at MSP 2nd District HQ on 4/20/15 at approximately 14:30 hrs on 04/20/15.

**PROPERTY:**
SEIZED BY: M LESINSKI
Prop 0001 - Desc: ONE (1) VERBATIM BRAND 700MB CD-R CONTAINING ROCKWOOD PD RADIO TRAFFIC, TASER LOG, AND USE OF FORCE POLICIES.  Type: Evidence
Obtained From: 32409 FORT RD
Rockwood  MI 48173
Wayne County  At or Near: ROCKWOOD PD
RECEIVED FROM LT. RANDY KRAUSE

Prop 0002 - Desc: ONE (1) VERBATIM BRAND DVD-R 4.7GB CONTAINING IN CAR AUDIO/VIDEO FROM VEHICLE OPERATED BY PATROMAN MITCHELL FOR THE DATE OF 4/16/15  Type: Evidence
Obtained From: 32409 FORT RD
Rockwood  MI 48173
Wayne County  At or Near: ROCKWOOD PD
RECEIVED FROM LT. RANDY KRAUSE

SEIZED BY: M LESINSKI
Prop 0003 - Desc: ONE (1) TASER BRAND ELECTRO-MUSCULAR DISRUPTION DEVICE, MODEL X2, BLACK IN COLOR, SERIAL NUMBER X29001012, INCLUDING 1 CHARGED CARTRIGE, 1 SPENT CARTRIDGE, SPENT LEAD WIRES AND TWO SPENT BARBS.  Type: Weapon (Non-Firearm)
Obtained From: 32409 FORT RD
Rockwood  MI 48173
Wayne County  At or Near: ROCKWOOD PD
RECEIVED FROM D/SGT STEVEN MERCURE

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
|  | D/SGT MARK LESINSKI #29 |  |  |
| 2 of 3 |  |  |  |

18

| | | |
|---|---|---|
| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT REPORT 0002** | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

## EXTERNAL DOCUMENTS:

Taser download file (10)
Taser Certification in the name of Nicholas Mitchell (1)

## STATUS:

Open

| PAGE<br>3 of 3 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0003 | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS<br>Open | | |
|---|---|---|

# ASSIST GIBRALTAR PD

**JOURNAL:**

None

**INFORMATION:**

I travelled to 14680 Gibraltar Rd., Apartment 16, Gibraltar MI. to process the scene of the original incident. I was assisted at this location by D/Sgt. Tim Holme and D/Sgt. Kathy Lewis.

**SCENE:**

The scene of this incident is described a a two story, brick apartment complex consisting of several detached buildings, each containing eight apartments. The front door of the building faces West into a large parking area. Apartment 16 is on the upper level located on the Southwest corner of the building.

**POLICE PERSONNEL ON SCENE:**

On scene I contacted D/F/Lt. Powell (MSP), D/Lt. Smiley (MSP), D/Sgt. Hammar (GPD), and Ofc. McInchak (GPD).

D/Sgt. Hammar provided a supplemental report which has been included as an external document. His report includes the activities of both he and Ofc. McInchak.

**SCENE PROCESSING/PHOTOGRAPHS:**

D/Sgt. Lewis photographed and processed apartment 16 located at 14680 Gibraltar Rd. Gibraltar, MI.

**CONTACT CHIEF LARRY WILLIAMS:**

I contacted Chief Williams as he arrived on scene at 14680 Gibraltar Rd. at approximately 10:00 AM this date. Williams had been appraised of the incident prior to my contact with him. Williams was aware that Gibraltar Police officer Gary Robinson responded to this location in response to a report of a domestic assault, that a taser had been deployed, and the suspect in the incident had subsequently died.

I advised Chief Williams that I would require any Taser, Taser documents/downloads, Gibraltar Taser policy and use of force policy, as well as 911 recordings and records of personnel involved in/responding to this incident. Chief William provided me with all information requested. The property and external documents are included in this report.

| PAGE<br>1 of 5 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| | | |
|---|---|---|
| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0003** | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

## AREA CANVASS:

D/Sgt. Holme and I canvassed the entire building located at 14680 Gibraltar Rd. I spoke with the residents of apartments 11,12,13, 17 and 18. D/Sgt. Holme spoke with the resident at apartment 15. Apartment 14 is currently unoccupied.

## WITNESS:

NAM: RUTH-ANN MARGARET WESTRICK

| | | |
|---|---|---|
| NBR: 14680    DIR:<br>STR: GIBRALTAR           APT/SUITE: 11<br>SFX: ROAD<br>CTY: GIBRALTAR          ST: MI<br>TXH: (734)749-7337       ZIP: 48173<br>TXW: | RAC: W<br>SEX: F<br>DOB: 09/12/1951<br>HGT: 5'06"<br>WGT: 135<br>HAI: GRY<br>EYE: BLU | ETH:<br>OPS: MI/W236751586709<br>SSN:<br>SID:<br>FBI:<br>MNU:<br>PRN: |

NAM: FRANCIS LEO WESTRICK JR

| | | |
|---|---|---|
| NBR: 14680    DIR:<br>STR: GIBRALTAR<br>SFX:                        APT/SUITE: 11<br>CTY: GIBRALTAR          ST: MI<br>TXH: (734)749-7337       ZIP: 48173<br>TXW: EYE: BRO    PRN: | RAC: W<br>SEX: M<br>DOB: 09/05/1945<br>HGT: 5'10"<br>WGT: 180<br>HAI: XXX | ETH:<br>OPS: MI/W236261507691<br>SSN:<br>SID:<br>FBI:<br>MNU: |

## INTERVIEW RUTH/FRANCIS WESTRICK:

I spoke with the Westricks at their residence in Gibraltar on 04/16/15 at approximately 10:30AM.

The Westricks advised that they had neither heard nor seen anything in the early morning hours of this date. The advised that they had eaten dinner at the Blue Margarita restaurant and had returned home at approximately 10:00 PM on 4/15/15. They state that they went directly to bed upon returning home and woke up this morning at approximately 9:00 AM without interruption in sleep.

## WITNESS:

NAM: TIMOTHY WAYNE FRISKE JR

| | | |
|---|---|---|
| NBR: 14680    DIR:<br>STR: GIBRALTAR<br>SFX: ROAD                  APT/SUITE: 13<br>CTY: GIBRALTAR          ST: MI<br>TXH: (734)799-3320       ZIP: 48173<br>TXW: | RAC: W<br>SEX: M<br>DOB: 03/28/1997<br>HGT: 5'09"<br>WGT: 150<br>HAI: BRO<br>EYE: BRO | ETH:<br>OPS:<br>SSN:<br>SID:<br>FBI:<br>MNU:<br>PRN: |

| PAGE<br>2 of 5 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0003 | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

NAM: TIMOTHY WAYNE FRISKE

NBR: 14680       DIR:
STR: GIBRALTAR
SFX: ROAD                          APT/SUITE: 13
CTY: ROCKWOOD                  ST: MI
TXH: (734)799-3320              ZIP: 48173
TXW:

RAC: W                ETH:
SEX: M                OPS: MI/F620793866719
DOB: 09/16/1974    SSN:
HGT: 5'07"            SID:
WGT: 165             FBI:
HAI: BRO             MNU:
EYE: BRO             PRN:

## INTERVIEW FRISKE:

I interviewed Tim Friske SR/JR at their residence at 14680 Gibraltar Rd. apt 13.

Tim Friske Sr. advised that he works the midnight shift at a local business and that he had left his residence at approximately 9:00 PM on 4/15/15. Therefore he was unaware of the events of the early morning hours of 04/16/15.

Tim Friske Jr advised that he was home and awake all night on 4/15-4/16. Tim said that he heard commotion upstairs beginning at approximately 3:00 AM on 4/16/15. Tim says that he heard loud arguing and screaming. Tim advised that he heard furniture moving and "things breaking". He further states that "it was so loud that it was shaking the floor". Tim advised that shortly after heard the initial noises "the little boy (Angelo) was in the hall at the top of the stairs screaming". Tim said that he was standing outside his apartment door and saw Angelo upstairs. Tim reports, shortly thereafter the "cops showed up,and told me to go back inside". Tim said that he returned to his apartment and didn't come out until I knocked on the door.

## WITNESS:

NAM: PATRICIA DAWN HOUST

NBR: 14680      DIR:
STR: GIBRALTAR
SFX: ROAD                          APT/SUITE: 12
CTY: GIBRALTAR                  ST: MI
TXH: (734)308-3832              ZIP: 48173
TXW:

RAC: W                ETH:
SEX: F                OPS:
DOB: 05/25/1952    SSN:
HGT: 5'04"            SID:
WGT: 180             FBI:
HAI: BRO             MNU:
EYE: BRO             PRN:

## INTERVIEW PATRICIA HOUST:

I interviewed Patricia Houst at her residence at 14680 Gibraltar Rd. Apt 12. It should be noted that Houst lives in the apartment directly below apartment 16, the scene of this incident.

Houst advised that she began to hear "arguing or yelling" from the apartment upstairs beginning at approximately 2:00AM on 4/16/15. Houst states that this is not unusual since "that guy (Kapuscinski) started coming around". Houst advised that she feels the situation escalated shortly after the initial argument because she heard screaming and "things thumping around, like furniture moving, and a loud crashing noise". Houst reports when she heard "the boy (Angelo) screaming" she called 911. It should be noted that Trenton P.D. received the 911 call from Houst and advised her that cars were already en route. A copy of the 911 call is on

| PAGE<br>3 of 5 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0003** | SUPPLEMENTARY DATE<br>Mon, Apr 20, 2015 | FILE CLASS<br>11001 |

file and held in property. Houst states that shortly after she placed the call, officers arrived on scene. Houst reports nothing further until she saw "the man coming out on the stretcher".

## WITNESS:

| NAM: ERIC JAMES STININGER | | |
|---|---|---|
| | RAC: W | ETH: |
| NBR: 14680      DIR: | SEX: M | OPS: MI/S355234367577 |
| STR: GIBRALTAR | DOB: 07/22/1990 | SSN: |
| SFX: ROAD | APT/SUITE: 17 | HGT: 5'09" | SID: |
| CTY: GIBRALTAR | ST: MI | WGT: 140 | FBI: |
| TXH: | ZIP: 48173 | HAI: BRO | MNU: |
| TXW: | | EYE: BRO | PRN: |

## INTERVIEW STININGER:

I interviewed Stininger at his residence, 14680 Gibraltar Rd. Apartment 17, Gibraltar, MI.

Stininger advised that he was home in the early morning hours of 4/16/15 and that he was awake all night. Stininger reports that sometime in the early morning he heard "screaming and yelling down the hall". Stininger said that he thought it was around 4:00 AM but cannot be sure of the exact time. He reports that he opened the door to look into the hall but that "the cops were already there".

## WITNESS:

| NAM: CATHERINE MARIE ADAMS | | |
|---|---|---|
| | RAC: W | ETH: |
| NBR: 14680    DIR: | SEX: F | OPS: MI/A352108585328 |
| STR: GIBRALTAR | DOB: 04/29/1954 | SSN: |
| SFX: ROAD | APT/SUITE: 18 | HGT: 5'05" | SID: |
| CTY: GIBRALTAR | ST: MI | WGT: 170 | FBI: |
| TXH: | ZIP: 48173 | HAI: GRY | MNU: |
| TXW: | | EYE: BRO | PRN: |

## INTERVIEW ADAMS:

I interviewed Adams at her residence 14680 Gibraltar Rd. apartment 18, Gibraltar, MI.

Adams advised that she had awaken at approximately 2:00AM on 4/16/15 to the sound the raised voices in the apartment next door (Adams lives on the upper floor of the apartment building, next door to 16, the scene of this incident). Adams advised that she could not hear anything other than raised voices, however "it must have been pretty loud because I could hear it". Adams advised that she "doesn't like to get into other peoples business" so she went back to sleep. Adams had nothing further to report.

| | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>4 of 5 | | | |

| | |
|---|---|
| **Michigan Department of State Police** | **ORIGINAL DATE** Thu, Apr 16, 2015 |
| **SUPPLEMENTAL INCIDENT REPORT 0003** | **SUPPLEMENTARY DATE** Mon, Apr 20, 2015 |

| ORIGINAL DATE | INCIDENT NO. |
|---|---|
| Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTARY DATE | FILE CLASS |
| Mon, Apr 20, 2015 | 11001 |

## EXTERNAL DOCUMENTS:

D/Sgt. Hammar supplemental report (3)
Gibraltar P.D. Taser Use Policy (5)
Gibraltar P.D. Use of Force Policy (14)
Download File documents for Taser serial #X00282930 (31)

## PROPERTY:

SEIZED BY: M LESINSKI
Prop 0004 - Desc: ONE (1) MEMOREX BRAND 700MB CD-R CONTAINING ORIGINAL DOWNLOAD
OF TASER LOG FROM GIBRALTAR POLICE DEPARTMENT. Type: Evidence
Obtained From: 29450 MUNRO ST
Gibralter MI 48173
Wayne County At or Near: GPD
RECEIVED FROM CHIEF LARRY WILLIAMS

Prop 0005 - Desc: ONE (1) MEMOREX BRAND 700MB DVD+R CONTAINING 911 CALL FROM
4/16/15 REGARDING THIS INCIDENT. Type: Evidence
Obtained From: 29450 MUNRO ST
Gibralter MI 48173
Wayne County At or Near: GPD
RECEIVED FROM CHIEF LARRY WILLIAMS

SEIZED BY: M LESINSKI
Prop 0007 - Desc: ONE (1) TASER BRAND ELECTRO-MUSCULAR DEVICE MODEL X-26 SERIAL
NUMBER X00282930 YELLOW/BLACK IN COLOR. Type: Weapon (Non-Firearm)
Obtained From: 14680 GIBRALTAR RD
Gibralter MI    48173
Wayne County At or Near: GPD
RECEIVED FROM CHIEF LARRY WILLIAMS

## STATUS:

Open

| PAGE 5 of 5 | INVESTIGATED BY D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

25

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0004 | SUPPLEMENTARY DATE<br>Tue, Apr 21, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS |
|---|
| Open |

# ASSIST GIBRALTAR PD

**JOURNAL:**

None

**INFORMATION:**

During the course of this investigation, through review of audio and video recordings, it was ascertained that Brownstown   Township Fire/EMS responded to the scene of this initial incident.  I spoke with Brownstown Fire personnel and received from them a Fire/EMS department run sheet including personnel involved in the medical run (The original run sheet is included as an external document).  The following Brownstown Twp. Fire Department personnel were interviewed reference this incident; Nicolas Sanfilippo, Phil Parent, James Lauer, and John Horvath.

**WITNESS:**

NAM: NICOLAS SANFILIPPO

| | | |
|---|---|---|
| | RAC: W | ETH: |
| NBR: 21313      DIR: | SEX: M | OPS: |
| STR: TELEGRAPH | DOB: 10/12/1979 | SSN: |
| SFX: ROAD | HGT: | SID: |
| CTY: BROWNSTOWN          ST: MI | WGT: | FBI: |
| TXH:                              ZIP: 48183 | HAI: BRO | MNU: |
| TXW: (734)675-4000 | EYE: BRO | PRN: |

**INTERVIEW SANFILIPPO:**

Sanfilippo advised that he is a paramedic and was on duty and in station 3 at 20385 Gibraltar Rd. near Allen Rd. in Brownstown Twp. on 4/16/15.  Sanfilippo responded to Gibraltar Shores Apartment complex, located at 16480 Gibraltar Rd. Gibraltar MI on 4/16/15 at approximately 3:40AM.  Sanfilippo was the passenger in Ambulance unit #1872.  Sanfilippo said that the call came in as a mutual aid request from the City of Gibraltar, for a non responsive male resulting from a Taser deployment.

Sanfilippo reports that upon his arrival on scene a Gibraltar EMS crew was bringing the patient (Kapucscinski) down the stairs from an upper floor apartment.  Sanfilippo and co-worker/paramedic Philip Parent prepared their ambulance stretcher for the patient.  Sanfilippo states that Brownstown Fire was taking over the incident from Gibraltar because Brownstown is prepared for advanced life support, whereas Gibraltar is a basic life support EMS.  Upon placing Kapuscinski into the ambulance he was unresponsive and placed on monitors.  The monitors showed no heart activity and the patient was not breathing.  The ambulance crew did not attempt to use an AED as there was no heart activity.  Sanfilippo advised that he observed no abnormal police activity and that he did not make contact with any of the responding officers as he was focused on the patient.

| PAGE<br>1 of 3 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| | | |
|---|---|---|
| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0004** | SUPPLEMENTARY DATE<br>Tue, Apr 21, 2015 | FILE CLASS<br>11001 |

## WITNESS:

NAM: PHILIP STEVEN PARENT

NBR: 21313    DIR:
STR: TELEGRAPH
SFX: ROAD
CTY: BROWNSTOWN          ST: MI
TXH:                              ZIP: 48183
TXW: (734)675-4000

RAC: W          ETH:
SEX: M          OPS:
DOB: 02/02/1979   SSN:
HGT:              SID:
WGT:              FBI:
HAI:              MNU:
EYE:              PRN:

## INTERVIEW PARENT:

Parent was the driver of the fire engine that responded to the original mutual aid request from Gibraltar EMS. Parent assisted Sanfilippo in placing Kapuscinski into the Brownstown Fire Dept. ambulance. Parent reports that upon entry into the ambulance, he recognized that Kapuscinski was deceased. Parent advised that the monitors in the ambulance were connected and that Kapuscinski had no heart rate. Parent said at this point there was nothing further that paramedics could do and they transported Kapuscinski to Oakwood Southshore hospital.

## WITNESS:

NAM: JAMES DOUGLAS LAUER

NBR: 21313    DIR:
STR: TELEGRAPH
SFX: ROAD
CTY: BROWNSTOWN          ST: MI
TXH:                              ZIP: 48183
TXW: (734)675-4000

RAC: W          ETH:
SEX: M          OPS:
DOB: 07/06/1975   SSN:
HGT:              SID:
WGT:              FBI:
HAI:              MNU:
EYE:              PRN:

## INTERVIEW LAUER:

Lauer was the driver of the ambulance in response to this incident. Lauer advised that he did not have contact with police personnel on scene, and only had brief contact with Kapuscinski. Lauer said that he had been the driver of the ambulance and transported Kapuscinski to Oakwood Southshore Hospital.

## WITNESS:

NAM: JOHN ANTHONY HORVATH

NBR: 21313    DIR:
STR: TELEGRAPH
SFX: ROAD
CTY: BROWNSTOWN          ST: MI
TXH:                              ZIP: 48183
TXW: (734)675-4000

RAC: W          ETH:
SEX: M          OPS:
DOB: 10/04/1963   SSN:
HGT:              SID:
WGT:              FBI:
HAI: GRY          MNU:
EYE: BRO          PRN:

| PAGE<br>2 of 3 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0004 | SUPPLEMENTARY DATE<br>Tue, Apr 21, 2015 | FILE CLASS<br>11001 |

## INTERVIEW HORVATH:

John Horvath is a lieutenant with the Brownstown Fire Department and was acting as shift commander at the time of this incident. Horvath was the passenger in the fire engine at the time of complaint.

Horvath reports that when Brownstown Paramedics were paged out for a mutual aid request in Gibraltar, he initially sent only the ambulance to assist. Horvath said that when he heard radio traffic that indicated CPR had been started he directed the Fire engine to assist for an advanced life support situation.

Horvath reports that upon arrival on scene he went to the back of the ambulance to prepare items for an advance life support transport of the patient (Kapuscinski). Horvath then reports that as soon as the patient was loaded into the ambulance "he looked dead". Horvath said that when the patient was hooked to the monitors, his assumption was correct and the patient was asystole (without heartbeat) and was not breathing.

Horvath said that he did not have any contact with Police officers on scene as he was preoccupied with the patient.

## EXTERNAL DOCUMENTS:

Brownstown Fire Department run sheet for 14680 Gibraltar Rd. 4/16/15 (5)

## STATUS:

Open

| PAGE<br>3 of 3 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0005 | SUPPLEMENTARY DATE<br>Thu, Apr 16, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS<br>Open | |
|---|---|

# ASSIST GIBRALTAR PD

**JOURNAL:**
None

**INFORMATION:**
I was contacted by D/Lt Smiley and instructed to process apartment 16 at 14680 Gibraltar Road. Upon my arrival I met with D/Sgt Lesinski who provided me with additional information. I was then advised that an assault had taken place in the apartment, and responding officers had deployed their tasers. The subject who was tased, later died at the hospital.

**CRIME SCENE:**
The scene consisted of a two bedroom apartment that was located on the second floor in the southwest corner of building number 14680. The apartment door was secured with yellow crime scene tape, and the scene was being secured by Gibraltar Police. During the briefing on the incident, I was advised that the subject had been tased in the southeast bedroom of the apartment, and that the assault also had occurred in that same bedroom.

The overall apartment was in disarray and messy. Clothes, paperwork and miscellaneous property were stacked and strewn all over the apartment. In the hallway adjacent to bedroom doors I located a broken glass/pottery item on the floor (item 20). This appeared to be freshly broken because there was dust from it that didn't seem to be interrupted, and this item probably would've cut the bottoms of feet as they walked through. In the southeast bedroom I located what appeared to be fresh holes in the drywall on the west wall of the bedroom. Underneath the holes I found dust and paint that did not appear disturbed, and that looked as if came from the holes above. A tape lift (item 17) was done in the area under the holes in the wall. Known samples (item 18) from one of the holes was also taken if needed for lab analysis.

In the southeast bedroom I collected what appeared to be the chads from taser cartridges being deployed, along with a suspected taser probe (items 14 and 15).

Bedding was taken from the bed in the southeast bedroom and futon in the living room, and packaged separately (items 16 and 21).

**PHOTOGRAPHS/SKETCH:**
I photographed the apartment, and also the uniforms of the responding officers. Photographs were uploaded to the Digital Crime Scene Repository. A sketch was also drawn and is attached to this supplement.

**PROPERTY:**
SEIZED BY: KATHLEEN LEWIS
Prop 0014 - Desc: SUSPECTED PINK AND YELLOW CHADS FROM TASER DEPLOYMENT  Type: Miscellaneous

| PAGE<br>1 of 3 | INVESTIGATED BY<br>D/SGT KATHLEEN LEWIS #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| Michigan Department of State Police | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTAL INCIDENT | SUPPLEMENTARY DATE | FILE CLASS |
| REPORT 0005 | Thu, Apr 16, 2015 | 11001 |

Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
SOUTHEAST BEDROOM FLOOR

Prop 0015 -  Desc: SUSPECTED TASER PRONG  Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
SOUTHEAST BEDROOM FLOOR

Prop 0016 -  Desc: BEDDING FROM DOUBLE BED IN SOUTHEAST BEDROOM  Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
SOUTHEAST BEDROOM - DOUBLE BED

Prop 0017 -  Desc: SUSPECTED DRYWALL DUST PAINT/PAINT AND FINGERNAIL FROM FLOOR
Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
SOUTHEAST BEDROOM FOUND ON THE FLOOR UNDER WHAT APPEARED TO BE FRESH HOLES
IN THE WEST WALL OF THE BEDROOM.

Prop 0018 -  Desc: KNOWN SAMPLES OF DRYWALL AND PAINT FROM SOUTHEAST BEDROOM
WALL. Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
SOUTHEAST BEDROOM TAKEN FROM ONE OF THE HOLES IN THE WALL.

Prop 0019 -  Desc: ARTICLES OF MAIL SHOWING RESIDENCY FOR THE APARTMENT.  Type:
Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
KITCHEN COUNTER

Prop 0020 -  Desc: BROKEN POTTERY/GLASS ITEM (CHATZKI)  Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:

| | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE | D/SGT KATHLEEN LEWIS #29 | | |
| 2 of 3 | | | |

30

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0005 | SUPPLEMENTARY DATE<br>Thu, Apr 16, 2015 | FILE CLASS<br>11001 |

FOUND BROKEN IN HALLWAY ADJACENT TO THE TWO BEDROOMS

Prop 0021 -  Desc: BEDDING FROM FUTON IN LIVINGROOM  Type: Miscellaneous
Obtained From: 14680 GIBRALTAR Apt: 16
Gibralter
Wayne County  At or Near:
ON FUTON IN LIVINGROOM

**EXTERNAL DOCUMENTS:**
Sketch of apartment

**STATUS:**
Open

| PAGE<br>3 of 3 | INVESTIGATED BY<br>D/SGT KATHLEEN LEWIS #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0006 | SUPPLEMENTARY DATE<br>Wed, Apr 22, 2015 | FILE CLASS<br>11001 |

INCIDENT STATUS
Open

# ASSIST GIBRALTAR PD

**JOURNAL:**

None

**INFORMATION:**

During the course of this investigation, it was revealed through interviews and 911 recordings that 3 Trenton P.D. Officers responded to 14680 Gibraltar Rd. to assist with the original call of Domestic Assault. The officers were later identified as Patrolman Arnoczki, Patrolman Steve Lyons, and Patrolman Stadler. I contacted Trenton Police Department D/Sgt. Mike Oakley and requested copies of the officers reports as well as any 911 recordings they may have regarding this incident. Patromen Arnoczki, and Stadler witness Offiers Robinson and Mitchell begin CPR. Lyons arrived as Kapuscinski was being loaded into Browstown Fire Dept. ambulance.

D/Sgt Oakley released to me the requested items and the reports are included in this report as external documents. The 911 recordings were given to me on a Lexar brand 32 GB flash drive which has been entered into property.

**EXTERNAL DOCUMENTS:**

Ptl. Arnoczki report (1)
Ptl. Lyons report (1)
Ptl. Stadler report (1)

**PROPERTY:**
SEIZED BY: M LESINSKI
Prop 0022 -  Desc: ONE (1) LEXAR BRAND 32 GB FLASH DRIVE, BLACK IN COLOR  Type: Evidence
Obtained From: 2872 W JEFFERSON ST
Trenton  MI 48183
Wayne County  At or Near: TRENTON PD
RECEIVED FROM D/SGT. MIKE OAKLEY

**STATUS:**

Open

| PAGE<br>1 of 1 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0007** | SUPPLEMENTARY DATE<br>Wed, Apr 22, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS |
|---|
| Open |

# ASSIST GIBRALTAR PD

**JOURNAL:**

None

**INFORMATION:**

This supplemental report was pulled inadvertently. See supplemental report number 4 for information.

**STATUS:**

Open

| PAGE<br>1 of 1 | INVESTIGATED BY<br>D/SGT MARK LESINSKI #29 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

33

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0008** | SUPPLEMENTARY DATE<br>Thu, Apr 23, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS |
|---|
| Open |

# ASSIST GIBRALTAR PD

**JOURNAL:**
None to date

**ADDITIONAL INFORMATION:**
The purpose of this supplemental report is to list the external documents attached to this incident.

**EXTERNAL DOCUMENTS:**
- Gibraltar supplemental incident report from D/Sgt Hammar (#15-1217), 3 pages.
- Gibraltar PD taser policy, 5 pages.
- Gibraltar PD use of force/ firearms policy, 14 pages.
- Gibraltar PD taser download from taser used by Officer Robinson, last 10 pages of report.
- Rockwood Police Dept taser download report, taser serial # X00282930, 31 pages.
- Taser training certificate for Rockwood Officer Nicholas Mitchell.
- Trenton PD incident report (#15-5195), 3 pages.
- Brownstown Fire Department incident report (#934), 5 pages.
- DD-40 (MSP consent to search form), signed by Christina Beneteau for her apartment.
- Oakwood Hospital health information release authorization form, sign by Christina Beneteau.
- Oakwood Hospital medical records pertaining to Christina Beneteau's visit on 4-16-15, 8 pages.
- Wayne County Medical Examiners "Police/ Prosecutor Protocol Request."
- Scene Sketch of apartment

**STATUS:**
Open

| | INVESTIGATED BY<br>D/SGT PATRICK ROTI #35 | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>1 of 1 | | | |

33

34

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0009 | SUPPLEMENTARY DATE<br>Thu, Apr 16, 2015 | FILE CLASS<br>11001 |

INCIDENT STATUS
Open

# ASSIST GIBRALTAR PD

**JOURNAL:**

None.

**INFORMATION:**

I was contacted by D/Lt. Smiley on 04-16-15 and requested to assist with two child forensic interviews at MSP 2nd District HQ.  D/Lt. Smiley advised the ANGELO and ALICE BENETEAU were present in the home during an incident with their mother, CHRISTINE BENETEAU, and her boyfriend DAVID.

**VICTIM/WITNESS:**

NAM: ANGELO LOUIS BENETEAU

| | | |
|---|---|---|
| NBR: 14680   DIR: | RAC: W | ETH: |
| STR: MIDDLE GIBRALTER | SEX: M | OPS: |
| SFX: | DOB: 02/06/2003 | SSN: |
| CTY: ROCKWOOD | APT/SUITE: 16 | HGT: | SID: |
| TXH: | ST: MI | WGT: | FBI: |
| TXW: | ZIP: 48173 | HAI: | MNU: |
| CT: (734)799-6981 | | EYE: | PRN: |

**INTERVIEW ANGELO BENETEAU:**

On April 16, 2015 I interviewed Angelo Louis Beneteau (12 years old) at the Michigan State Police 2nd District HQ in the interview room.  I conducted a forensic interview. The interview was video and audio recorded.  *(The following is a summary of the interview and is not a transcription. The below documentation correlates to the audio/video).*

Angelo presented as a normal functioning 12 year old male.

Angelo was able to provide background information about previous residences and respond to questions. Angelo stated he was held back 1 year in school and attends Parson's School.

Angelo described the "truth" as something that did happen and "what's realistic".  He agreed to correct me if I made a mistake and if he did not know the answer to a question he would say he did not know.  Angelo stated he understood the rules and would follow them during the interview.

Angelo stated the following relative to the incident:

| PAGE<br>1 of 9 | INVESTIGATED BY<br>D/SGT SUNSHINE PONZETTI #313 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| | ORIGINAL DATE | INCIDENT NO. |
| --- | --- | --- |
| Michigan Department of State Police | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTAL INCIDENT | SUPPLEMENTARY DATE | FILE CLASS |
| REPORT 0009 | Thu, Apr 16, 2015 | 11001 |

1) Resides with his sister (ALICE), his mother (CHRISTINA), and his mother's boyfriend (DAVID) at apartment #16 in Gibraltar for about half a year or 6 months. DAVID stays the night on and off. DAVID did stay Monday/Tuesday/Wednesday night at their house.

2) He was talking to me because of mom's boyfriend. DAVID was mad about something and he snapped. He has known DAVID for about 5 months.

3) David was mad, yelling and throwing stuff. DAVID threw glass in the living room.

4) He woke up in bed. He sleeps alone in his room. He looked at his phone/tablet and noted the time at 3:00am. He heard DAVID yelling when he woke up.

5) He left his bedroom and went into the living room. Mom and DAVID are in the living room standing up talking to each other. He did not note anything broken.

6) He returns to his room and he heard ALICE'S bedroom door open.

7) MOM and DAVID are still yelling at each other and he hears something get thrown. He heard MOM tell ALICE to go back to her room.

8) He turned on the TV in his bedroom and was watching Disney channel and watched TV until he heard more yelling. He did not know what was being said. He heard DAVID'S voice.

9) He went back out to the living room and saw DAVID'S cell phone on the floor.

10) MOM and DAVID go into his room and the door is closed. MOM is wearing a solid blue "scrubs" top only, no pants. She has socks on and no pants on but the shirt is long. Her hair was down. DAVID is completely nude.

11) DAVID was nude the first time he went into the living room. DAVID was nude both times he saw him and MOM had the above clothes on.

12) He heard more yelling from his room.

13) He saw 3 holes in walls in his room after the police arrived and everything was over. He punched the wall one time in his room and put a hole in the wall while he heard yelling and was sent back to his room the first time. The wall is the shared wall with his sister's room. There are 3 holes in his bedroom. He believed someone threw his tablet against the wall because he saw pieces of the wall on his tablet and a hole in the wall. He did not know anything about the 3rd hole in his bedroom wall.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
| --- | --- | --- | --- |
| 2 of 9 | D/SGT SUNSHINE PONZETTI #313 | | |

35

36

| Michigan Department of State Police | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT** | SUPPLEMENTARY DATE | FILE CLASS |
| **REPORT 0009** | Thu, Apr 16, 2015 | 11001 |

14) He picked up DAVID'S phone from the living room floor, walked out into the hallway, went downstairs and exited the building to get the address then called 911.

15) He talked to a female 911 operator. He heard yelling and pushing and his MOM and SISTER are upstairs. The police show up about 2 minutes after he called 911. Two male police men show up in the same type police cars. Both police officer's are tall one had curly hair and one was bald.

16) He meets the police outside and he tells them apartment #16. They go to his apartment and his SISTER answers the door.

17) The police went to his room and DAVID got tased.

18) He followed the police up the stairs and waited outside when the police entered.

19) He did not see anything but heard yelling from DAVID getting tasered. DAVID was yelling that, it hurt badly.

20) The police said get on the ground 2 times. He did not hear the police say anything else. MOM exits his bedroom after DAVID was tasered.

21) MOM is wearing the same clothes and crying a little bit. He can't see if she is hurt.

22) MOM does not say anything when she comes out to be with him and ALICE.

23) He did not hear anyone say Taser. The police told him that DAVID was knocked out.

24) The police call for an ambulance. The ambulance showed up and took DAVID to the hospital.

25) He was in the living room with his MOM and SISTER. He turned on the TV and watched Hannah Montana. The police were talking to MOM in the hallway.

26) Two police showed up and looked around mostly in the living room and his bedroom. He does not remember anyone else coming into the apartment.

27) A detective showed up and began taking pictures of the broken glass in the living room and holes in the bedroom wall.

28) He went to the police department with his MOM and SISTER and sat for 3 hours.

29) He was not left alone at the apartment.

30) (Prior to DAVID and MOM going in his room) He cleaned up dirty clothes in his bedroom and put them in the laundry basket, his scooter was against the right wall by his bed. Nothing was on the

| | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE | D/SGT SUNSHINE PONZETTI #313 | | |
| 3 of 9 | | | |

| | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| Michigan Department of State Police | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTAL INCIDENT REPORT 0009 | SUPPLEMENTARY DATE | FILE CLASS |
| | Thu, Apr 16, 2015 | 11001 |

floor and nothing was broken when he exited he bedroom the last time and MOM and DAVID went in and closed the door.

31) After DAVID went to the hospital he went back and looked in his room. He noted his clothes basket was away from the wall as well as the scooter. All the blankets were taken off of his bed and were on the floor. Everything was off his bed and on the floor. There was some type on "mud" stuff on the floor by his TV.

32) Nothing like this has ever happened before.

33) MOM and DAVID were going to get married 1 month after they met. That night was different. He doesn't know what happened.

34) About a week ago MOM was taken to the hospital and he and ALICE stayed with DAVID at DAVID'S mother's house in Taylor. MOM was in the hospital for 1 week from some medicine.

35) He trusts DAVID and has known him for 6 months.

36) He has not seen MOM and DAVID argue before.

37) Sometimes DAVID goes to his mother's house during the week and does not stay with them every night.

38) MOM told him DAVID died last night.

39) He has a good relationship with MOM.

40) The police asked him what happened and he wrote stuff down on paper at his house and he gave it to the police.

41) He told the truth during the interview.

42) He did not clean anything up in the house.

43) MOM and SISTER did not clean anything up as far as he knows. MOM lost her phone and found it under the dresser in her room.

44) MOM and SISTER did not tell him to call 911.

45) He called 911 because MOM and DAVID were yelling and pushing each other in his bedroom and in the living room. DAVID pushed MOM in the shoulders. DAVID was standing in front of MOM. MOM pushed DAVID in the chest.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 4 of 9 | D/SGT SUNSHINE PONZETTI #313 | | |

38

| Michigan Department of State Police | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT** | SUPPLEMENTARY DATE | FILE CLASS |
| **REPORT 0009** | Thu, Apr 16, 2015 | 11001 |

46) This night was the first time he saw DAVID nude.

47) DAVID hit him because he kept going in the living room. He was struck on the top of the head one time by DAVID while in his bedroom. MOM was present when he got hit in the head. He was standing in the middle of MOM and DAVID when he was struck. MOM told DAVID not to hit him. DAVID and MOM were standing in his room and he closed the door and left then called 911.

*FOLLOWUP QUESTIONS FOR ANGELO. After interviewing ALICE and talking to D/Sgt. Roti I asked the below clarifying questions to ANGELO reference to him being punched/assaulted by DAVID.*

48) DAVID punched him in his the bedroom 1 time on top of his head. He did not wrestle with DAVID. He said someone told him that DAVID stepped on his neck but that did not happen. DAVID did not step on his neck. DAVID punched him one time on the top of his head.

## INJURIES:

ANGELO did not have any visible marks on top of his head. He stated he was punched on the top of his head toward his forehead.

## WITNESS:

NAM: ALICE JOY BENETEAU

| | | RAC: W | ETH: |
|---|---|---|---|
| NBR: 14680    DIR: | | SEX: F | OPS: |
| STR: MIDDLE GIBRALTAR | | DOB: 05/26/2005 | SSN: |
| SFX: | APT/SUITE: 16 | HGT: | SID: |
| CTY: GIBRALTER | ST: MI | WGT: | FBI: |
| TXH: | ZIP: | HAI: | MNU: |
| TXW: | | EYE: | PRN: |
| MB: (734)799-6981 | | | |

## INTERVIEW ALICE BENETEAU:

On April 16, 2015 at approximately 1:20pm I interviewed ALICE JOY BENETEAU (9 years old) at the Michigan State Police 2nd District HQ in the interview room. I conducted a forensic interview. The interview was video and audio recorded. *(The following is a summary of the interview and is not a transcription. The below documentation correlates to the audio/video).*

ALICE presented as a normal functioning 9 year old. She currently attends Parson's School and is in the 4th grade.

She stated she currently lives in apartment #16 in Gibraltar, MI. She has been living at the apartment since she started school.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 5 of 9 | D/SGT SUNSHINE PONZETTI #313 | | |

38

| 39 | ORIGINAL DATE | INCIDENT NO. |
| Michigan Department of State Police | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTAL INCIDENT | SUPPLEMENTARY DATE | FILE CLASS |
| REPORT 0009 | Thu, Apr 16, 2015 | 11001 |

She described books she enjoyed reading and was able to describe and recount a book from the "Big Nate Book Series". She described age appropriate activities she enjoys.

ALICE described the truth as something that actually happened. She demonstrated the difference between truth and lies with the example being about unicorns and unicorns not being real.

ALICE agreed to tell the truth during the interview. She demonstrated the ability to correct me if I made a mistake with the example about the color of her jacket.

ALICE stated she would not make anything up while we talked and she if she did not know the answer she would say she did not know.

ALICE stated the following relative to the incident:

1) She was talking to me "because of the incident".

2) DAVID, MOM'S boyfriend, had a bad dream and MOM also had a bad dream and MOM tried to wake up DAVID to hug her and DAVID hit MOM (She believed that happened because MOM told her and she did not observe the interaction).

3) DAVID was cussing and hitting MOM. DAVID said the "H", "B", and "F" words. She spelled the H word as HOR, B word BICH, and F word FUCK. She heard DAVID say the words.

4) MOM did not cuss. MOM said "stop it". She did not know how many times MOM said "stop it".

5) She was in her bedroom and did not come out. MOM told her to stay in her room. She stayed in her room and the door cracked a little bit (not completely closed).

6) She heard banging and believed her brother punched a hole in his wall.

7) Heard DAVID throwing stuff at her MOM (did not see). She saw blankets, computer, phone, and cigarettes on the floor in the living room when she came out of her room when the police were at her apartment.

8) Heard DAVID throwing stuff because MOM was saying, "stop it" (did not see).

9) Exited bedroom when police arrived and went into the living room with MOM.

10) MOM was wearing a hospital paper shirt and DAVID was naked. MOM said DAVID was naked, she did not see DAVID naked.

11) MOM had an incident and was wearing something she got when she was in the hospital.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
| | D/SGT SUNSHINE PONZETTI #313 | | |
| 6 of 9 | | | |

| 40 | ORIGINAL DATE | INCIDENT NO. |
|---|---|---|
| **Michigan Department of State Police** | Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| **SUPPLEMENTAL INCIDENT** | SUPPLEMENTARY DATE | FILE CLASS |
| **REPORT 0009** | Thu, Apr 16, 2015 | 11001 |

12) MOM overdosed on something that starts with a "P" maybe predidine (sp).

13) (during MOM'S incident) DAVID told her to stay in her room because MOM died for over 10 minutes and DAVID called his friend to do CPR. The friend came and told her to clean up in her room.

14) ALICE'S real father lives in the Upper Peninsula. She sometimes called DAVID "DAD" and has known him for 6 months.

15) MOM was gone for about 1 week after her incident and she lived with DAVID at his mother's house while MOM was gone.

16) DAVID is nice and they got along well. DAVID spent over $1,000.00 on her and her brother for Christmas. DAVID used to work at a bar protecting the outside incase people got stupid. DAVID and MOM do not work right now.

17) MOM is the best MOMMY ever.

18) Never saw MOM and DAVID argue, fight, or hit each other prior to this incident. DAVID never hit her. DAVID is nice and caring.

19) DAVID takes medicine (steraquill) and MOM takes medicine (aderol, steraquill, can't remember).

20) Felt unsafe during incident with MOM and DAVID. Felt scared DAVID would hurt her because she heard DAVID threaten to kill them. She heard DAVID tell MOM "I'm gonna kill your kids" when they were fighting last night. She believed MOM and DAVID were in the living room when he said it. She was in her bedroom when she heard DAVID threaten them. She did not hear anything else. She heard MOM say, "stop it" and "you're hurting me". She got scared and did not like DAVID anymore.

21) BROTHER'S television was on and not sure about living room television. She knows DAVID said it because she knows his voice and it was DAVID'S voice that said, "I'm gonna kill your kids".

22) She heard a Taser sound when the police were there because she heard "zzzzz". MOM said DAVID died and was tasered 2 times; 1 time in the side and 1 time in the back.

23) Went in police car with BROTHER and MOM to police station.

24) She picked up blanket from floor in the living room.

25) She saw pills on the floor in the living room; a long light orange pill, one bright orange, and a white one. She picked them up and gave them to MOM. There were also a bunch of meds on the

| | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE | D/SGT SUNSHINE PONZETTI #313 | | |
| 7 of 9 | | | |

41

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0009 | SUPPLEMENTARY DATE<br>Thu, Apr 16, 2015 | FILE CLASS<br>11001 |

bathroom counter by the sink. She gave about 2 long orange pills and 3 of the white and orange pills to MOM to give to the police.

26) She did not see MOM clean anything up and did not know about BROTHER cleaning up.

## OTHER PERSON:

NAM: AMY LYNN HAUBE

| | RAC: W | ETH: |
|---|---|---|
| NBR: 2923     DIR: | SEX: F | OPS: MI/H100066564077 |
| STR: HARRISON | DOB: 01/29/1968 | SSN: |
| SFX: AVENUE | HGT: | SID: |
| CTY: TRENTON          ST: MI | WGT: | FBI: |
| TXH: (734)365-7065     ZIP: 48183 | HAI: | MNU: |
| TXW: | EYE: | PRN: |
| MB: (734)493-2729 | | |

## INFORMATION:

HAUBE stated she is cousin's with CHRISTINA BENETEAU however they are more like sisters. She stated ANGELO and ALICE often spend time with her and she has always been there to support CHRISTINA when she has had difficulties. HAUBE stated she just learned CHRISTINA overdosed and she did not know about the incident or care for ANGELO and ALICE while CHRISTINA was in the hospital.

HAUBE stated she was willing to care for the children.

## DHS 3200:

I called in a DHS-3200 referral to the Centralized Intake number based on the information gathered during the above interviews with ALICE and ANGELO. DHS LOG #3467441.

After completing the above referral, Case Agent Robert Hardy, DHS, called me directly. He advised he had an open case and was involved with the BENETEAU family.

HARDY spoke directly to AMY HAUBE via telephone and made arrangements with her regarding ANGELO and ALICE.

I followed up with Case Agent Hardy after he spoke to AMY HAUBE. He advised ANGELO and ALICE could be released in her care and he made arrangement to followup at her residence.

| | INVESTIGATED BY<br>D/SGT SUNSHINE PONZETTI #313 | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| PAGE<br>8 of 9 | | | |

41

**Michigan Department of State Police**

**SUPPLEMENTAL INCIDENT**
**REPORT 0009**

| ORIGINAL DATE | INCIDENT NO. |
|---|---|
| Thu, Apr 16, 2015 | 020-0000789-15 (DB) |
| SUPPLEMENTARY DATE | FILE CLASS |
| Thu, Apr 16, 2015 | 11001 |

## ACTION TAKEN:

ANGELO and ALICe BENETEAU left MSP 2nd Dist HQ in the care of AMY HAUBE.

## STATUS:

Open.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 9 of 9 | D/SGT SUNSHINE PONZETTI #313 | | |

43

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0010 | SUPPLEMENTARY DATE<br>Fri, Jul 24, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS |
|---|
| Open |

## ASSIST GIBRALTAR PD

### JOURNAL:

| 05/26/15 | D/Sgt. Roti | DHS report# 3467441 indicated complaint is not supported by a perponderance of evidence. - Referring to children. Also contact M.E. office this date nothing back yet. |
|---|---|---|
| 06/08/15 | D/Sgt. Roti | ME report #15-4606 received and attached. (10 pages) - copy to MF. ME report hand delivered to APA - Carmen DeFranco. Advised 2-3 weeks out on decision. |
| 06/25/15 | D/Lt. Smiley | MR - Pends PROS review. |
| 07/02/15 | D/Sgt. Roti | P/I #22 copied to disc for PA DeFranco, Gibralter PD (Hammer's report) and PICS along with Trenton PD 911 call from neighbor and delivered to APA DeFranco on this date. |
| 07/21/15 | D/Lt. Smiley | MR - PROS review |
| 07/25/15 | D/Sgt. Fellner | Per request by D/Sgt. Patrick Roti, P/I's #3 and #4 authorized for release. P/I #3 released to D/Sgt. Steve Mercure, Rockford PD (for Chief Rowe) and P/I #7 released to Chief Larry Williams, Gibralter PD. Copies of signed AICS property receipts TOT MSP Work/Master files. |

### STATUS:

Open

| PAGE<br>1 of 1 | INVESTIGATED BY<br>D/SGT CYNTHIA FELLNER #1 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| Michigan Department of State Police | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT 0011 | SUPPLEMENTARY DATE<br>Mon, Aug 24, 2015 | FILE CLASS<br>11001 |

INCIDENT STATUS
Open pending release of property

## ASSIST GIBRALTAR PD

**JOURNAL:**

| 7-30-15 | Smiley | Supp #10 Review |
|---|---|---|
| 8-18-15 | Smiely | M/R OIC to update journal |
| 8-24-15 | Roti | Item #14 & #15 released to Gibraltar PD. Items #13, 16, 19, 20, 21 were all released to the complainant/ victim this date. Receipts completed on all items and placed in external documents. |

**ADDITIONAL INFORMATION:**
I received a letter dated July 9, 2015 from the Wayne County Prosecutor's Office stating the following:

"It is the conclusion of the Public Integrity Unit that the actions of Officers Robinson and Mitchell are justified as appropriate use of force in self defense and/or the defense of others and, in the best interest of justice no criminal charges will be authorized in this matter."

The letter was signed by James D. Gonzales, Chief Special Operations Division, Wayne County Prosecutor's Office. This letter has been marked and placed in master file.

**STATUS:**
Open, pending release/ destruction of property only.

| PAGE<br>1 of 1 | INVESTIGATED BY<br>D/SGT PATRICK ROTI #35 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| **Michigan Department of State Police** | ORIGINAL DATE<br>Thu, Apr 16, 2015 | INCIDENT NO.<br>020-0000789-15 (DB) |
|---|---|---|
| **SUPPLEMENTAL INCIDENT**<br>**REPORT 0012** | SUPPLEMENTARY DATE<br>Mon, Oct 26, 2015 | FILE CLASS<br>11001 |

| INCIDENT STATUS<br>Tot other police department | |
|---|---|

# ASSIST GIBRALTAR PD

## JOURNAL:

| 08/26/15 | D/Lt. Smiley | Supp #11 reviewed. Pends property. |
|---|---|---|
| 09/21/15 | D/Lt. Smiley | M/R. Pends property. |
| 09/28/15 | D/Sgt. Roti | Case pends property destruction only, then to be closed out exceptional clearance. |
| 10/20/15 | D/Sgt. Fellner | Property Items #11, #17 and #18 destroyed at MSP Monroe by D/F/Lt. Mary Kapp and D/F/Lt. James Wolf. |

## STATUS:

Tot other police department

| PAGE<br>1 of 1 | INVESTIGATED BY<br>D/SGT PATRICK ROTI #35 | REPORTED BY | REVIEWED BY |
|---|---|---|---|

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015

ITEM: 0015
Description:
  Desc:
  SUSPECTED TASER PRONG
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK

  Released by: D/SGT. ROTI _____ Signature: _____
        (Print Rank and Full Name)

  Date Disposed: 8-24-15 _____

Released to:
  Name: _____ Signature: X/LT.R.C.Sly Lt. R. Canterbury #0598

  Address: GIBRALTAR PD _____

  Apt#: _____

  City/State: _____

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015

ITEM: 0014
Description:
  Desc:
  SUSPECTED PINK AND YELLOW CHADS FROM TASER DEPLOYMENT
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK

  Released by: __SGT. ____ ____   Signature: _____
                (Print Rank and Full Name)

  Date Disposed: __8-24-15_____        A9548

Released to:
  Name: _____   Signature: _____
  Address: __GIBRALTAR PD_____
  Apt#: _____
  City/State: _____

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015

ITEM: 0013
Description:
   Desc:
A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP AND BOTTOM). THE
PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH AREA,
POSSIBLY FECAL MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH
COLORED CIRCULAR STAIN ON THE BACK NEAR THE BOTTOM OF THE SHIRT,
POSSIBLY FECAL MATTER. THE CLOTHING WAS COLLECTED BY OAKWOOD SOUTH
SHORE HOSPITAL WHEN THE VICTIM WAS ADMITTED INTO THE ER ON 4-16-15.
   Value:

Reason for entry: Manufactured/Trace Evidence
Remarks:
A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP AND BOTTOM). THE
PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH AREA,
POSSIBLY FECAL MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH
COLORED CIRCULAR STAIN ON THE BACK NEAR THE BOTTOM OF THE SHIRT,
POSSIBLY FECAL MATTER.

Release of Property:
   Authorized by: ROTI,PATRICK

Released by: D/SGT. ROTI_____ Signature: _____
      (Print Rank and Full Name)

Date Disposed: 8-24-15_____

Released to:
Name: CHRISTINA BENEITEAU_____ Signature: _____

Address: 14680 GIBRALTAR RD_____

Apt#: #16_____

City/State: GIBRALTAR / MI 48173_____

20-0789-15

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015

ITEM: 0016
Description:
  Desc:
  BEDDING FROM DOUBLE BED IN SOUTHEAST BEDROOM
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK

Released by: _D/SG. Roti____   Signature: _____
            (Print Rank and Full Name)

Date Disposed: _8-24-15_____

Released to:
Name: _CHRISTINA BENETEAU____   Signature: _____

Address: _14680 Gibraltar Rd_____

Apt#: _#16_____

City/State: _Gibraltar / MI 48173_____

20-0789-15

20-784-15

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015


ITEM: 0019
Description:
  Desc:
  ARTICLES OF MAIL SHOWING RESIDENCY FOR THE APARTMENT.
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK

  Released by: _D/SGT. Roti_____   Signature: _____
              (Print Rank and Full Name)

  Date Disposed: _8-24-15_____

Released to:
  Name: _CHRISTINA BENETEAU_____   Signature: _____

  Address: _14680 GIBRALTAR RD_____

  Apt#: _#16_____

  City/State: _GIBRALTAR / MI 48173_____

020-0789-15

20-0789-15

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015


ITEM: 0020
Description:
  Desc:
  BROKEN POTTERY/GLASS ITEM (CHATZKI)
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK

  Released by: _DSGT Post._____ Signature: _____
              (Print Rank and Full Name)

  Date Disposed: __8-24-15_____

Released to:
  Name: _CHRISTINA BENETEAU___ Signature: _____

  Address: _14680 Gibraltar Rd_____

  Apt#: _#16_____

  City/State: _Gibraltar / MI 48173_____

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 4/16/2015
File Class: 11001
Date Printed: 8/24/2015

ITEM: 0021
Description:
    Desc:
    BEDDING FROM FUTON IN LIVINGROOM
    Value:

Reason for entry: Seized
Remarks:

Release of Property:
    Authorized by: ROTI,PATRICK
    Released by: D/SGT ROTI_____   Signature: _____
                 (Print Rank and Full Name)

    Date Disposed: ___8-24-15_____

Released to:
    Name: _CHRISTINA BENETEAU___   Signature: _____

    Address: __14680 GIBRALTAR RD_____

    Apt#: __#16_____

    City/State: __GIBRALTAR / MI 48173_____

20-0789-15

20-789-15

*020-789-15*

**MASTER FILE**

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 07/23/2015
File Class:
Date Printed: 7/23/2015

ITEM: 0003
Description:
  Desc:
  ONE (1) TASER BRAND ELECTRO-MUSCULAR DISRUPTION DEVICE, MODEL X2,
  BLACK IN COLOR, SERIAL NUMBER X29001012, INCLUDING 1 CHARGED
  CARTRIGE, 1 SPENT CARTRIDGE, LEAD WIRES AND TWO SPENT BARBS.
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI, PATRICK
                 MSP-SIS
  Released by: D/SGT. CINTHIA FELLNER  Signature: D/Sgt. C. Fell
               (Print Rank and Full Name)

  Date Disposed: THURSDAY / 07-23-2015 @ 12:08 p.m.

Released to:
  Name: DET/SGT. STEVE MELCURE  Signature: S. M.

  Address: 32409 FORT ST

  Apt #: ROCKWOOD POLICE DEPARTMENT

  City/State: ROCKWOOD MI 48173

020-789-15   MASTER FILE

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 07/23/2015
File Class:
Date Printed: 7/23/2015


ITEM: 0007
Description:
  Desc:
  ONE (1) TASER BRAND ELECTRO-MUSCULAR DEVICE MODEL X-26 SERIAL
  NUMBER X00282930 YELLOW/BLACK IN COLOR.
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI, PATRICK
                 MSP-SIS
  Released by: D/SGT. CYNTHIA FELLNER Signature: D/Sgt. C. Fell

       (Print Rank and Full Name)

  Date Disposed: THURSDAY / 07-23-2015 @ 12:32 p.m.

Released to:
  Name: Chief Larry Williams   Signature: Chief. Ly Will

  Address: 29450 Munro ave.

  Apt#: GIBRALTAR POLICE DEPARTMENT

  City/State: Gibraltar, Michigan

020-789-15

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 07/23/2015
File Class:
Date Printed: 7/23/2015


ITEM: 0003
Description:
  Desc:
  ONE (1) TASER BRAND ELECTRO-MUSCULAR DISRUPTION DEVICE, MODEL X2,
  BLACK IN COLOR, SERIAL NUMBER X29001012, INCLUDING 1 CHARGED
  CARTRIGE, 1 SPENT CARTRIDGE, LEAD WIRES AND TWO SPENT BARBS.
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK
                 MSP-SIS
  Released by: D/SGT. Cynthia Fellner   Signature: D/Sgt. CFell
              (Print Rank and Full Name)

  Date Disposed: Thursday / 07-23-2015  @ 12:08 p.m.

Released to:
  Name: DET/SGT. STEVE MELCURC   Signature: S. M

  Address: 32409 FORT ST

  Apt#: Rockwood Police Department

  City/State: Rockwood MI 48173

MICHIGAN DEPARTMENT OF STATE POLICE

AUTHORIZED TO RELEASE PROPERTY RECEIPT

Incident: 020-0000789-15   Date of Report: 07 /23/2015
File Class:
Date Printed: 7/23/2015

ITEM: 0007
Description:
  Desc:
  ONE (1) TASER BRAND ELECTRO-MUSCULAR DEVICE MODEL X-26 SERIAL
  NUMBER X00282930 YELLOW/BLACK IN COLOR.
  Value:

Reason for entry: Seized
Remarks:

Release of Property:
  Authorized by: ROTI,PATRICK
        MSP-SIS
  Released by: D/SGT. CYNTHIA FELLNER Signature: D/Sgt. Fell
        (Print Rank and Full Name)

  Date Disposed: Thursday / 07-23-2015 @ 12:32 p.m.

Released to:
  Name: Chief Larry Williams    Signature: Chief. Williams

  Address:    29450 Munro ave-

  Apt#: GIBRALTAR POLICE DEPARTMENT

  City/State: Gibraltar, Michigan.

*020-789-15*

Michigan Department of State Police

RELEASED PROPERTY RECEIPT

DATE PRINTED: 09/26/2015

INCIDENT: 020-0000789-2015     DATE OF INCIDENT: 04/16/2015     FILE CLASS: 11001

PROPERTY#: 1, Evidence, VALUE: 0

DESCRIPTION: ONE (1) VERBATIM BRAND 700MB CD-R CONTAINING ROCKWOOD PD RADIO
TRAFFIC TASER LOG AND USE OF FORCE PO LICIES.

PROPERTY#: 2, Evidence, VALUE: 0

DESCRIPTION: ONE (1) VERBATIM BRAND DVD-R 4.7GB CONTAINING IN CAR AUDIO/VIDEO
FROM VEHICLE OPERATED BY PATROMAN M ITCHELL FOR THE DATE OF 4/16/15

PROPERTY#: 4, Evidence, VALUE: 0

DESCRIPTION: ONE (1) MEMOREX BRAND 700MB CD-R CONTAINING ORIGINAL DOWNLOAD OF
TASER LOG FROM GIBRALTAR POLICE DEP ARTMENT.

PROPERTY#: 5, Evidence, VALUE: 0

DESCRIPTION: ONE (1) MEMOREX BRAND 700MB DVD+R CONTAINING 911 CALL FROM 4/16/15
REGARDING THIS INCIDENT.

PROPERTY#: 6, Evidence, VALUE: 0

DESCRIPTION: ONE CD DISK LABELED "WCMEO PHOTOS - 15-4606."

SUPERVISOR
AUTH/REV.:     DLT. JAMES SMILEY

AUTH, OK'D BY D/SGT. PATRICK ROTI

Signature      Signature : MSP SIS A/V FILES
Authorized by:
ROTI, PATRICK
Released by:    Released to:
FELLNER, CYNTHIA    MSP SIS AUDIO/VIDEO FILES

RELEASED TO MSP SECOND DIST HQ SIS A/V F
12111 TELEGRAPH RD

Date Disposed: 09/26/2015     TAYLOR, MI 48180

Page 1 of 2

020 - 789 - 15

Michigan Department of State Police

RELEASED PROPERTY RECEIPT

DATE PRINTED: 09/26/2015

INCIDENT: 020-0000789-2015    DATE OF INCIDENT: 04/16/2015    FILE CLASS:    11001

PROPERTY#: 8, Evidence, VALUE: 0

DESCRIPTION: (4) FOUR DVD'S CONTAINING THE RECORDED INTERVIEW(S) OF ANGELO
BENETEAU CONDUCTED WITH D/SGT SUNSHINE  PONZETTI ON 4-16-15. THE DVD'S ARE
LABELED #1, #2, #3, AND #4.
WITH D/SGT SUNSHINE PONZETTI ON 4-16-15. THE DVD'S ARE LABELED #1, #2, #3,
AND #4.


PROPERTY#: 9, Evidence, VALUE: 0

DESCRIPTION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF ALICE BENETEAU

WITH D/SGT SUNSHINE PONZETTI AT THE MSP 2ND DISTRICT HEADQUATERS ON 4-16-15.
(1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF ALICE BENETEAU WITH D/SGT
SUNSHINE PONZETTI AT THE MSP 2ND DISTRICT HEADQUATERS ON 4-16-15.


PROPERTY#: 10, Evidence, VALUE: 0

DESCRIPTION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER GARY
ROBINSON OF GIBRALTAR PD. THE INTERV IEW WAS CONDUCTED AT THE MSP 2ND
DISTRICT HEADQUARTERS.
(1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER GARY ROBINSON OF
GIBRALTAR PD. THE INTERVIEW WAS CONDUCTED AT THE MSP 2ND DISTRICT
HEADQUARTERS.


PROPERTY#: 12, Evidence, VALUE: 0

DESCRIPTION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER MITCHELL
OF ROCKWOOD PD AT MSP 2ND DISTRI CT HEADQUARTERS. RECORDED ON 4-20-15 AT
APPROXIMATELY 1430 HRS
(1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER MITCHELL OF
ROCKWOOD PD AT MSP 2ND DISTRICT HEADQUARTERS. RECORDED ON 4-20-15 AT
APPROXIMATELY 1430 HRS

PROPERTY#: 22, Evidence, VALUE: 0

DESCRIPTION: ONE (1) LEXAR BRAND 32 GB FLASH DRIVE, BLACK IN COLOR


Signature :                          Signature :   MSP SIS A/V FiLES
Authorized by:                       Released to:
ROTI,PATRICK                         MSP SIS AUDIO/VIDEO FILES
Released by:
FELLNER,CYNTHIA                      RELEASED TO MSP SECOND DIST HQ SIS A/V F
                                     12111 TELEGRAPH RD

Date Disposed: 09/26/2015            TAYLOR, MI 48180

# *Rockwood Police Department*

## *Carrying of Weapons*

Date: April 5, 2012

Distribution: All Police Employees

Implementation: Immediate

Compliance: Mandatory

**Intent:**

To define job classifications which are authorized to carry weapons during the performance of their assigned duties, including scheduled training at off-site locations.

**Sworn Officers with Full Powers of Arrest:**

Sworn law enforcement, full or part time, may carry weapons in accordance with federal, state, local laws and departmental policies.

**Non-Sworn Employees:**

Non-Sworn employees, including dispatchers, **shall not** carry any weapons, including but not limited to firearms, knives, or TASER® Electronic Control Devices.

Non-Sworn employees that possess a valid Michigan Concealed Pistol License (CPL) **shall not** carry any weapons, including but not limited to firearms, knives, or TASER® Electronic Control Devices.

**Violation:**

Employees that are found to be in violation of this policy shall be subject to departmental discipline up to and including possible termination. Departmental discipline shall not be deemed to preclude or replace possible criminal charges if the employee is found to be in violation of federal, state or local laws.

Date: _____        Signed: _____

                                                  Stephen P. Rowe – Chief of Police

# DEADLY FORCE

POLICY/PROCEDURE

EFFECTIVE DATE:
JANUARY 1, 1996

1.    Definitions:

DEADLY FORCE:
Deadly force is a force which is capable of causing death or serious physical injury.

IMMEDIATE THREAT OF DEATH OR SERIOUS PHYSICAL INJURY:
For an immediate threat of death or serious physical injury to exist, the following three conditions must be met:

A. Ability
In the officer's reasonable belief, the person to be apprehended must have the present apparent ability to cause death or serious physical injury.

B. Opportunity
In the officer's reasonable belief, the person to be apprehended must have the immediate opportunity to cause death of serious physical injury to the officer or another.

C. Jeopardy
In the officer's reasonable belief, the officer or another must be in immediate jeopardy of being killed or seriously physically injured by the person to be apprehended.

D. Reasonable Belief
A belief is reasonable when the facts or circumstances are such is to cause a man of prudence and caution to hold a similar belief. Reasonable belief is equivalent to probable cause to believe.

E. Serious Physical Injury
Serious physical injury is a bodily injury that creates a substantial risk of death, causes serious, permanent disfigurement, or results in long-term loss or impairment of any bodily member or organ.

2.    Warning

Whenever it will not unreasonably endanger himself or another, a police officer shall identify himself as a police officer and warn the person posing the immediate threat of death or serious physical injury of his intention to shoot before the officers discharges his firearm.

3.    Line of Fire

Before using a firearm, an officer shall observe the line of fire to ensure that innocent bystanders will not be unreasonably jeopardized by use of the firearm.

4.    Confrontation

An officer may use deadly force, including use of a firearm, when in the officer's reasonable belief:

A.    Deadly force is necessary to defend the officer or another from an immediate threat of death or serious physical injury, and

B.    The safety of bystanders will not be unreasonably jeopardized by the officer's actions.

5.    Fleeing Felons

An officer may use deadly force, including the use of a firearm, to affect the capture of a suspect when the officer has a personal knowledge:

A.    The suspect is fleeing from the commission of a crime involving the death or serious physical injury of the victim, and

B.    The safety of bystanders will not be unreasonably jeopardized by the officer's actions, and

C.    Deadly force is necessary to prevent the escape, and

D.    If feasible, a warning about the use of deadly force is given.

6.    Misdemeanors

An officer shall <u>not</u> use deadly force to apprehend misdemeanors.

7.    Warning Shots

Officers shall not fire warning shots.

8.    Vehicles

A. Officers <u>shall</u> <u>not</u> discharge a firearm from a moving vehicle.

B. Except in the event of a confrontation as described in "4". Above, officers shall not discharge a firearm at a vehicle.

9.  Crowds

    Officers shall not discharge firearms at, toward, or into crowds or gatherings.

10. Deadly Force With Weapons Other Than Firearms

    Except under circumstances in which deadly force is expressly authorized in these procedures, deliberate use of any object to cause death or serious physical injury (for example, as a club) is strictly prohibited.

11. Shooting Animals

    A.  Officers discharging a firearm at an animal shall first ensure that discharging the firearm will not endanger any persons or property.

    B.  When all reasonable alternative methods of apprehending the animal have failed or are not feasible, an officer may discharge a firearm to destroy an animal under any of the following circumstances:

        1.  An animal is severely injured, vicious, or rabid and is attacking people or other animals.

        2.  A domestic animal is severely injured and the express consent of the owner has been obtained, in writing if possible.

        3.  A domestic animal is severely injured and must be destroyed for humane reasons, and the owner is unknown or cannot be contacted within a reasonable period of time.

        4.  A wild animal is severely injured and must be destroyed for humane reasons.

        5.  A court had ordered the officer to destroy an animal.

12. Knowledge of Policy

    All officers shall personally receive copies of the department's policy on the use of deadly force. Officers shall return a signed and dated copy of an appropriate form indicating receipt of the policy and the department shall keep the copy.

# ROCKWOOD POLICE DEPARTMENT
# IN CAR VIDEO PROCEDURES

POLICY/PROCEDURE

EFFECTIVE DATE:
JULY 21, 1999

## I. Purpose

This policy will provide guidelines for the operation and use of in-car-video recording equipment. These procedures will help to ensure the efficient operation of the systems and will maintain evidential integrity, while providing a chain of custody, which will ensure proper court presentation.

Recordings will be utilized in the interest of officer safety, to facilitate conviction of arrests/violators and to review situations which result in personnel complaints. The recordings will be routinely reviewed. Minor policy and procedural violations revealed during the review of the recordings, will be handled through counseling and training.

## II. Procedure

A. Prior to officers utilizing the in-car-video system, they will specifically trained in the operation of the system, by qualified department personnel.

B. The in-car-video system shall only be used for official police business and shall not be used contrary any law or ordinance.

C. The camera shall not be put on the external cable system without specific permission of a supervisor. Exception, to document evidence for an arrest (IE: a gun or drugs found inside a vehicle)

D. The system shall be checked for proper operation before the start of each shift and the condition shall be logged on the officer's daily log. The door of the VCR vault in the trunk shall remain closed and locked at all times. The officer shall activate the system and record by his/her voice the time, date, and officer's name. Any malfunction or related problem shall be noted on the officer's daily and reported on a departmental correspondence form and forwarded to the Chief or his designate.

E. The power to the system will be turned on and a tape loaded and maintained throughout the shift. The unit shall be in record mode except when calling out of service, such as lunch, station doing reports. The tape shall not be removed from the unit until the end of the shift or the tape is exhausted and being replaced with a blank tape during extended shifts. Unless directed by a supervisor.

F.  Officers shall use only department issued videotapes and shall not erase, record over or re-use the issued tape except in accordance with this policy.

G.  The microphone battery will be checked at the beginning of each shift and replaced as necessary.  The microphone is to be worn by the vehicle operator.  The audio shall be turned on whenever the vehicle operator is making a citizen contact and the video equipment is in service.  **DO NOT** have the microphone on when inside the station or at times when other employees have the expectation that their conversation is private.

H.  The microphone is to be worn with the wire extended as much as possible from the belt.  To prevent the antenna wire from being caught on something, it is recommended that it be fed up through the inside of the uniform shirt and attached high on the shirt or tie (if applicable).

I.  Officers are encouraged to provide a narration with the video recording preparatory to each stop.  The intent of this narration is to assist in necessary written documentation and to assist the officer in supporting probable cause for the stop.

J.  Officers are also encouraged to use the auto zoom feature on the unit to capture close ups of vehicle license plates during traffic stops, or pursuits.

K.  The VCR vault key will be kept on the corresponding unit key ring.

III.  Video Tape Procedure

A.  Each tape will have a sequential three-digit number. I.E. #001

B.  The user will record this number on the top of the daily log sheet.

C.  Significant incidents will be noted on the tape form, I.E. OUIL arrests, significant violations, possible court actions.

D.  The plastic tape case and corresponding form shall be kept together

E.  Rewind the tape at the end of shift.

F.  Tapes shall be placed in the recorded tape locker.

G.  Tapes will be rotated through storage after approximately 30-45 days, unless noted.

H.  Each operator will install a new tape at the beginning of his/her shift and take it our at the end of shift.

I.   Note on violations "TAPE" and the number for future reference for court.

IV.  Dissemination and viewing of video tapes

    A.  The videotapes are considered department property and are not to be used or copied for any personal use or dissemination.

    B.  Freedom of Information Act (FOIA) requests will be honored, providing the requests are consistent with the Act and does not fall under the exemptions of the Act.

    C.  Defense attorneys, either through FOIA or disclosure, may have legitimate requests to view or receive copies of certain videotapes (or portions of).

    D.  When officers view the videotapes, it will be done with the purpose for training, investigations, supervisory review/counseling and internal inquiries.

V.  Evidence

    A.  Videotapes that the officers request to be saved as evidence shall be tagged with an evidence tag and a ticket number noted (if applicable).  The tape will be stored until the case is completed.  Note "TAPE" on any ticket written where the tape is to be preserved as evidence.

# ROCKWOOD POLICE DEPARTMENT
# JURISDICTION POLICY

POLICY/PROCEDURE

EFFECTIVE DATE:
JANUARY 1, 1996

Officers shall limit their police patrols to the boundaries of and the City of Rockwood. Boundaries refer to the roadway that is considered the exterior of the City limits. There will be times it will be necessary to leave the boundary of the City of Rockwood, and the dispatcher shall be notified by radio immediately when you leave, the reason, and when you return.

## ASSIST OTHER AGENCIES:

This department shall, upon the request of another jurisdiction, assist in police functions. This assist is considered Mutual Aid assist; therefore the initial request must come from the Department needing assistance through their dispatcher. Officers from another jurisdiction calling for emergency assistance, (Officer in trouble); Rockwood units may respond without delay of dispatch to assist the police unit requesting help. Officers shall remain in radio contact and consider Rockwood complaints to have priority.

## TRAFFIC ASSISTS:

Officers may find it necessary to assist on an ambulance escort or funeral detail. Officers shall assist to prevent a traffic problem and eliminate the risk of accidents. Officers shall remain available for police runs and notify dispatch when they are clear.

## LUNCH:

Do to the lack of facilities available, officers may leave the City of Rockwood and pick up lunch. Officers must return to the city to eat. Officers shall notify the dispatcher when leaving and must remain in service. The above is limited to the city of Flat Rock and the Village of South Rockwood only.

**** There will be police functions such as prisoner transfer, court runs, etc., that will require leaving the city. The dispatcher shall be advised when the patrol unit leaves and returns to the city, and dispatchers shall log this information on the daily log.

Officers leaving the City of Rockwood shall log the nature and times on their daily log.

# NON-LETHAL FORCE

POLICY/PROCEDURE

EFFECTIVE DATE:
NOVEMBER 1997

Purpose
The purpose of this policy is to establish Departmental rules in regard to the use of non-lethal force.  Non-lethal force is intended primarily for situations involving unarmed citizens.

Definitions

**A. Non-Lethal Force**
The amount of force which when used is not intended to result in serious injury or death.

**B. Reasonable Force**
What constitutes reasonable force depends on the facts in the particular case.  The force used must be judged in light of the circumstances as they appeared to the officer at the time action was taken.  Reasonable force is generally considered to be that force which an ordinary prudent and an intelligent person, with the same knowledge and experience, and in the same situation as that of the officer would have deemed necessary under the circumstances.

Authorized Use of Non-Lethal Force

A. Non-lethal force may be used in the following situations and when other alternatives are not available or have failed.

1. In self-defense or defense of another person.

2. To effect the arrest of persons physically or passively resisting the lawful arrest, attempting to flee from custody, or when necessary to prevent the escape or to recapture one whom an officer has arrested.

3. To prevent a person from injuring themselves or another.

4. Against persons creating a public disturbance in order to maintain public order.

5. To control an arrested individual whom is either actively or passively refusing to comply with arrest, search, booking, and other necessary directives.

6. Against animals menacing or attacking a citizen or an officer.

B. Officers shall only use the degree of force they reasonably believe is necessary to control the situation. The following factors are to be used to be considered in determining the degree of force to be used.

    1. Physical size, strength, and weaponry of the person(s) compared to the officers'.

    2. Nature of the encounter.

    **3.** Actions of the persons(s).

    **4.** Exigent circumstances such as availability of back up or the number of persons involved.

C. Any tactic that is likely to cause serious injury or death, such as "choke holds", may not by used in a non-lethal force situation.

<u>Non Lethal Weapons</u>

Effective this date the following weapons will be considered an authorized non-lethal weapon. Both A and B are weapons and should not be used indiscriminately. Their uses are intended to reduce possibility of injury to both the offender and the officer.

A. Freeze Chemical Agent Spray

    1. Officers will be issued "Freeze", and will be required to carry it on their duty belt, in the approved holster, opposite their duty weapon.

    2. Officers should carry "Freeze" in their weak hand when considering using the chemical agent.

    3. Officers will be trained in the use of "Freeze" prior to it being issued to them.

B. Impact Weapon / Collapsible Baton

    1. Officers shall be issued a collapsible baton and holder and will be required to carry it on their duty belt.

    2. Officers shall be trained by a certified instructor on the proper use of the collapsible baton, and will be updated on an annual basis.

    3. Officers shall log in their police report when the use of a collapsible baton was necessary in the performance of their duties.

Officers are <u>prohibited</u> from carrying or using a non-lethal weapon that has not been approved by the Chief of Police.

1. Blackjacks, saps, and sap gloves are specifically prohibited.

2. Flashlights will not be utilized as a primary non-lethal weapon. Officers shall utilize a flashlight as a last resort to prevent injury to themselves or the public.

## Chemical Use Report

Upon any discharge of "Freeze" as a non-lethal weapon, a chemical irritant report must be filed immediately. This report will be forwarded to the Chief of Police with a copy of the incident report.

## Medical Treatment

After the chemical agent has been used, the areas of the body that was exposed should be flushed as soon as possible. Do not use any cream or oils on the contaminated areas. This will confine the irritant and may cause the skin to blister.

If a chemical agent is used in an enclosed area, such as the vehicle or small room, open all windows and allow the area to ventilate.

Officers shall allow the offender, or any other party exposed to the chemical spray, to follow the above procedure. Officers shall allow utilization of the decontamination room, located in the fire department, for the above purposes.

******If there is a visible injury or complaint of injury as a result of the use of non-lethal force, the officer in charge shall arrange transportation to a medical facility and allow an examination by the medical staff.

# Use of Chemical Irritant Report

Date: _____ Time: _____ Case Number: _____

Location: _____

Subject's Name: _____ Sex: ___ Race: ___ DOB: _____

Address: _____ Phone: _____

Type of Incident: _____

Charge(s): _____

Chemical Irritant Type & Manufacturer: _____

Chemical Effect: (  ) Immobilized Subject   (  ) No Effect

Permitted to Wash: (  ) Yes   (  ) No   (  ) Refused

Injury to Subject: _____

Hospital: _____ Doctor: _____

Injury to Officer: _____

Witnesses:

_____
              Name                     address                phone

_____
              Name                     address                phone
Other related reports: _____

Officer(s) Using Chemical Irritant:

Name: _____ ID#_____ Unit/Squad_____

Name: _____ ID#_____ Unit/Squad_____

Summary of Incident:

_____

_____

_____
                    Investigating Supervisor: _____

## Rockwood Police Department

### Patrol Rifle Policy

#### I. Purpose:

The purpose of the policy is to establish procedures and guidelines for the use and deployment of patrol rifles.

#### II. Definition:

The patrol rifle is a lightweight, semi-automatic, gas operated, air cooled, magazine fed, rifle chambered in 5.56mm, designed on the AR-15 platform. The patrol rifle is an authorized weapon, which is owned by the Department or privately owned by a sworn member of the Department. The patrol rifle is made available to properly trained and qualified officers as a supplemental resource to their sidearm. The patrol rifle provides the officer with range and accuracy superior to that of the handgun or shotgun.

#### III. Specifications:

The authorized patrol rifle issued by the Department shall be an AR-15/M-4 semi-automatic rifle chambered in 5.56mm. Privately owned patrol rifles must be chambered in 5.56mm caliber only and have semi-automatic fire control only.

Privately owned patrol rifles must first be inspected by the Department Patrol Rifle Instructor or Department AR-15 Armorer, and be approved by the Chief of Police prior to duty use.

All patrol rifles, whether department issued or privately owned <u>shall</u> have a 100 yard zero. All privately owned rifles must have the zero verified by the department patrol rifle instructor prior to duty use.

#### IV. Accessories:

Department issued rifles shall be equipped with a single point sling, magazines and duty ammunition. Department rifles will also be issued with a protective case if the officers assigned vehicle is not equipped with a rifle rack.

Authorized privately owned rifles must be equipped with a sling. The sling may be a standard or tactical two-point sling, a single point tactical sling.

<u>All</u> patrol rifles, whether Department owned or privately owned, shall only be loaded with Department approved duty ammunition.

1

Only approved accessories are authorized for use with patrol rifles, whether Department or privately owned.  Any accessories to be used with a Department issued or privately owned rifle must first be inspected and approved by the Department Patrol Rifle Instructor or Department AR-15 Armorer prior to duty use.

## V.  Rifle Maintenance:

1. The primary responsibility for maintenance of the Department issued patrol rifles shall fall upon the Department AR-15 Armorer who shall inspect and service each rifle as needed.
2. Each officer carrying the patrol rifle, whether Department or privately owned, may be required to fieldstrip and clean that rifle as needed.
3. Each officer carrying a patrol rifle shall be responsible for promptly reporting any damage or malfunction of an assigned patrol rifle.
   a. Any malfunction or damage shall require the affected rifle to be removed from service until inspected and re-certified for duty by the Department AR-15 Armorer.
4. Each patrol rifle, whether Department or privately owned, shall be subject to inspection by the Department Patrol Rifle Instructor or Department AR-15 Armorer at anytime.
5. No modification shall be made to **any** patrol rifle, whether Department or privately owned, without prior authorization of the Department AR-15 Armorer.  Any approved modification shall only be completed by the Department AR-15 Armorer or a Certified gunsmith.
6. Officers shall be responsible for care and cleaning of their authorized privately owned patrol rifle.
7. Officers with privately owned patrol rifles in need of repair may send their rifle to the manufacturer or a certified AR-15 Armorer or a Certified gunsmith for repair.  However, the rifle **must** be inspected and certified for duty use by the Department AR-15 Armorer prior to duty use.

## VI.  Training:

Officers shall not carry or utilize the patrol rifle unless they have successfully completed the Department's patrol rifle training course or an approved equivalent.  The departmental patrol rifle-training course shall consist of an initial 16 hours of training and qualification.  A certified patrol rifle instructor shall conduct the training.  Officers shall thereafter be required to successfully complete sustainment training and qualification approximately every six (6) months.

Any officer who fails to qualify or fails to complete the required training sessions shall no longer be authorized to carry the patrol rifle until such training or qualification is completed.

2

73

Officers failing to qualify will be given remedial training by the patrol rifle instructor and afforded another opportunity to qualify.

## VII. Documentation:

The Department patrol rifle instructor(s) shall maintain current and accurate records of all training and the qualification (or disqualification) of every officer who receives training with the patrol rifle.

## VIII. Patrol Rifle Assignment:

All officers assigned to patrol that have successfully completed the required patrol rifle training, may carry the patrol rifle, as available in their patrol vehicle. The patrol rifle shall be secured in the in car rack or carried in the trunk of the vehicle if the vehicle does not have a designated security rack. Officers shall remove the patrol rifle from their vehicle at the end of their shift unless their vehicle has a rifle security rack. Officers shall inspect the patrol rifle prior to the beginning of their shift and document any damage, immediately in writing.

## IX. Special Assignment:

Officers assigned to specialized units (i.e. S.W.A.T.) who are patrol rifle certified, may at the discretion of the Chief of Police, be assigned a department issued patrol rifle, indefinitely. Any officer having a department issued rifle assigned to them on an indefinite basis for use with a special team, may be allowed, at the discretion of the Chief of Police, to transport said rifle to and from that officers residence to facilitate a more rapid response to a call out.

The officer shall be responsible for any repair or replacement of the assigned weapon or any parts found to be damaged through misuse or neglect. The officer shall be responsible for the total cost of the assigned rifle and any accessories if the weapon is lost or stolen while issued to them.

The officer shall not leave the rifle in his personal vehicle and shall take all necessary precautions to keep the weapon from being accessed by unauthorized persons, (i.e. children, family members, friends, etc.)

73

## X. Deployment:

The following is a list of situations that may necessitate officers deploying the patrol rifle.

1. Any potential dangerous/deadly force situation where the officer has reason to believe that deployment of the patrol rifle will contribute to the safe resolution of the incident or diminish risk to the officer or public.
2. When the officer reasonably anticipates an armed encounter.
3. Situations where an officer reasonably expects the need to meet or exceed the suspect's firepower.
4. When an officer reasonably believes that there may be a need to deliver accurate fire on a barricaded suspect or a suspect with a hostage.
5. When the officer has reason to believe that the suspect is wearing body armor.

This list is not meant to be all-inclusive, as other unforeseen circumstances may necessitate deployment of the patrol rifle. Officers should be aware of the capabilities and limitations of the patrol rifle and themselves and make their decisions accordingly.

## XI. Discharge of the Patrol Rifle:

Discharge of the patrol rifle shall be governed by the Departmental Deadly Force Policy.

### WARNING

This directive is for departmental use only and does not apply in criminal or civil proceedings. The department policy should not be construed as a creation of a higher legal standard of safety or care in any evidentiary sense with respect to third party claims. Violations of this directive will only form the basis for departmental administrative sanctions.

_____
Date

_____
Chief of Police

# Rockwood Police Department

# Handgun Policy

***Distribution: All Officers***
***Date: 08/09/10***

**I.**     <u>**Policy**</u>

To standardize the sidearm / duty weapon of the members of the Rockwood Police Department and to set forth standards of secondary / Back-up weapons.

**II.**     <u>**Primary Sidearm**</u>

A. Members of the Rockwood Police Department shall carry a Glock Model 22 or 23 chambered in .40 S&W as there primary sidearm.

B. Officers hired after July 01, 2006 shall be issued either a Glock Model 22 or 23, which shall remain the property of the City or Rockwood.

C. Officers shall pass a departmental qualification course sidearm prior to carrying their sidearm either on or off duty.

**III.**     <u>**Secondary / Back-up Weapon**</u>

A. Members of the Rockwood Police Department are encouraged but not mandated to carry a back-up firearm for officer safety purposes.

B. Secondary / Back-up firearms shall have a minimum caliber of .380 A.C.P. or larger.

C. Officers wishing to carry a secondary / Back-up firearm shall submit a written request to the Chief of Police detailing the following:
   1. Manufacturer of firearm
   2. Model of firearm
   3. Caliber of firearm

D. Upon approval from the Chief of Police, the officer shall present the firearm to the departmental armorer for inspection prior to utilizing the weapon on duty.

E. Officers shall pass a departmental qualification course with their secondary / Back-up firearm prior to carrying it on or off duty.

F. Officers shall load their secondary / back-up firearm with commercially available ammunition that is suitable for self-defense.

### IV. **Off Duty Firearms**

Members of the Rockwood Police Department are encouraged to but not mandated to carry a firearm while off duty.

Officers must pass a departmental qualification course with their off duty firearm prior to carrying it.

### V. **Out of State Carry**

Members of the Rockwood Police Department, who wish to carry a firearm outside of the State of Michigan, should familiarize themselves with the Law Enforcement Officers Safety Act (LEOSA) prior to carrying in another state.

### VI. **Adherence to Laws**

Members of the Rockwood Police Department shall adhere to all Local, State and Federal Laws when carrying a firearm either on or off duty.

Signed: _____
                Stephen P. Rowe – Chief of Police

# Rockwood Police Department
## Policy and Procedure

**SUBJECT: Use of Taser Policy**

## I. Purpose

The purpose of this policy is to provide guidelines for the appropriate use of the Taser X26/X2 CEW (Conducted Energy Weapons).

## II. Policy

This policy establishes guidelines for the use of force and ensures proper training for all personnel of the Rockwood Police Department as it relates to the use of a CEW.

## III. Definition

The CEW is a Shape Pulse generator weapon that falls into the category of Less Lethal force. It transmits electrical pulse that causes an uncontrollable contraction of the muscle tissue, which cause temporary physical debilitation to a person.

Less Lethal Force is defined force that is less likely to result in death or serious physical injury. When deadly force is not justified and/or necessary, but when empty hand control techniques have been or will likely be ineffective in the situation.

Note: The CEW is an additional law enforcement tool and is not intended to replace firearms, or replace other tools or techniques. The CEW should be used only when it is appropriate for situation present. The utilization of a CEW is considered use of force and as such its usage must comply with the use of force guidelines.

## IV. CEW Guidelines

>Only a department-issued CEW shall be carried or used.
>Each CEW shall be inspected prior to carrying. Only a properly functioning CEW may be carried.
>No officer shall carry a taser unless he/she has successfully completed a department approved training course. The training will consist of a minimum of eight (8) hours initial certification, and re-certification once a year.

>Personnel may use an approved CEW when they are required to use physical force to take a person into custody, to protect himself/herself from physical assault, to protect a subject from injuring himself/herself or others, and against animals who pose a serious threat toward the officer or others.

>The CEW shall not be intentionally aimed at a person's head, neck, and chest or groin area.

>Any discharge other than the function test, either intentional or accidental, shall necessitate the immediate notification of the officer's supervisor. The Chief or his designee shall investigate each incident and ensure the proper forms are submitted.

>Prior to the use of a CEW the officer shall, if possible, give the subject verbal commands. The officer shall inform the suspect that if they don't comply he/she will be "tased". Officers shall, if possible, inform others his/her intent to discharge the CEW by announcing "TASER! TASER!"

>After an officer uses a taser on a subject, the officer shall:

A: Handcuff the subject immediately to minimize the threat of injury to either the officer or the subject, providing safety.

B: If the cartridge was deployed, remove the CEW darts at the earliest opportunity by only a taser certified officer or qualified medical personnel.

If the probes are stuck in the facial area, soft tissue around the neck, genital area or breasts of females, only qualified medical personnel shall remove.

C: Officers will provide first aid following removal of the probes by applying iodine or alcohol wipes, and Band-Aid to the probes sites as needed. Officers shall inspect the probes after removal to ensure that a probe, or probe barb has broken off and it is still embedded in a subject's skin; the subject shall be provided appropriate medical attention to facilitate the removal of the object.

D: The officer shall visually examine the area struck to determine if an injury was sustained.

E: The officer discharging the weapon shall be responsible to collect a minimum of three (3) of the A.F.I.D. tags and the spent cartridge and darts and place them into evidence. The taser probes removed from the suspect's body shall be considered a biological hazard and shall be handled in accordance with Policy and Procedure (Bloodborne Pathogens). Officers shall wear protective latex gloves when removing and handling the discharge probes.

>When an officer either intentionally or accidentally, uses the taser, even if the subject was not struck, he/she shall prepare a departmental incident report, and a taser deployment report. It shall be forwarded via the chain of command to the supervisor for review.

**>It is strictly forbidden to use the X26 Taser in a manner in which punitive and outside the scope of the officer's authority.**

V.   Maintenance and Care (amended 6/28/04)

>Only a certified Taser Instructor will maintain and replace air cartridges by their expiration date.  The expired air cartridges will be used for training purposes only.
>At the beginning of each shift, the officers **MAY** SPARK TEST the unit by **removing the cartridge** from the device and test the X26 Taser to ensure that it is properly charged or by turning the unit on and verifying the units power supply on the CID.
>Only properly functioning and charged X26 Taser shall be carried on duty.


>Officers shall, if possible, avoid using the X26 Taser in the following situations:

   A.  Any known or obvious pregnant female.
   B.  Any individual who is saturated with or in the presence of highly flammable or combustible materials or liquids, including Meth Labs.
   C.  Any subject who is likely to receive a secondary injury resulting from a fall.
   D.  The area of the neck and face.

>Do not store the X26 Taser near flammable liquids or fumes.
>Do not place the air cartridges near any source of static electricity.
>The Range Master or his designated X26 Taser Instructor shall:

   A.  Receive, inspect and ensure the maintenance and replacement of the X26 devices assigned to department personnel.
   B.  Establish and maintain systems to record issuance of the X26 taser and cartridges.  Serial numbers shall be recorded.
   C.  Maintain an adequate supply of batteries and air cartridges.
   D.  Return defective or damaged X26 Taser devices and cartridges to Michigan Taser Distributing.
   E.  Obtain service and/or replacement for defective or damaged X26 components from Michigan Taser Distributing.
   F.  Provide re-certification training to certified users.
   G.  Review copies of the "Taser X26 Deployment Report" for completeness, and forward copy to Michigan Taser Distributing.
   H.  Maintain training updates from Michigan Taser Distributing.

VI.   Reporting Procedure

>The officer who has discharged the X26 Taser shall record the facts and circumstances on the incident report.

>The officer who has discharged the X26 Taser shall complete the Taser deployment form.

>The X26 Taser deployment form shall be reviewed by the certified instructor for completeness, and a copy of the form shall be sent to Michigan Taser Distributing. This copy is for statistical data only and shall be kept confidential by Michigan Taser Distributing.

>Photographs shall be taken, if possible, of the probe impact sites if the skin has been penetrated, except when the impact site is the breast or genital area of a female and groin area of a male. The photographs will be submitted into evidence.

## VII Carrying Procedure

Officers carrying the Taser SHALL NOT carry a baton on their duty belt, but may carry the baton in the vehicle.

Officers SHALL mark on their daily log the number (T1,2 or 3) of the Taser Unit below the hours worked line on the front.

Cartridges and EDPMs are assigned to the Taser unit and SHALL not be interchanged. Additional cartridges – will be available from the Sergeant or Chief.

The spare cartridge can be removed from the extended magazine while carrying the Taser. The cartridge shall be replaced in the magazine at the end of the officer's shift.

Tasers not in use shall be stored in the pistol locker in the squad room.

The Taser shall be carried in a department-approved holster.

AUTOMATED INCIDENT CAPTURE SYSTEM
INCIDENT PROPERTY REPORT - FULL

AGENCY          :  MI8202000
INCIDENT NUMBER :  020-0000789-2015
DATE OF REPORT  :  08/15/2017 AT 13:52

1 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) VERBATIM BRAND 700MB CD-R CONTAINING
ROCKWOOD PD RADIO TRAFFIC TASER LOG AND USE OF FORCE POLICIES.
SEIZED BY: M LESINSKI

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015, 0830

STREET ADDRESS: 32409  FORT  Road
COUNTY: Wayne, CITY/TOWNSHIP: Rockwood, STATE: Michigan, ZIP: 48173
AT OR NEAR: ROCKWOOD PD
ADDITIONAL LOCATION INFO: RECEIVED FROM LT. RANDY KRAUSE

REVIEW DATE/TIME: 04/24/2015, 0931 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 5, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14       DB SHELF

JOURNAL ENTRY: 6, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #1, #2, #4, #5 & #22 FROM P/L #9 TO P/R.

JOURNAL ENTRY: 55, DATE/TIME: 07/22/2015, 1459
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 81, DATE/TIME: 08/24/2015, 1032
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 124, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111  TELEGRAPH  Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

2 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) VERBATIM BRAND DVD-R 4.7GB CONTAINING IN
CAR AUDIO/VIDEO FROM VEHICLE OPERATED BY PATROMAN MITCHELL FOR THE DATE OF

```
              AUTOMATED INCIDENT CAPTURE SYSTEM
              INCIDENT PROPERTY REPORT - FULL

         AGENCY          :  MI8202000
         INCIDENT NUMBER :  020-0000789-2015
         DATE OF REPORT  :  08/15/2017 AT 13:52
```

4/16/15
SEIZED BY: M LESINSKI

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015, 0930

STREET ADDRESS: 32409 FORT Road
COUNTY: Wayne, CITY/TOWNSHIP: Rockwood, STATE: Michigan, ZIP: 48173
AT OR NEAR: ROCKWOOD PD
ADDITIONAL LOCATION INFO: RECEIVED FROM LT. RANDY KRAUSE

REVIEW DATE/TIME: 04/24/2015, 0931 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 7, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14        DB SHELF

JOURNAL ENTRY: 8, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #1, #2, #4, #5 & #22 FROM P/L #9 TO P/R.

JOURNAL ENTRY: 56, DATE/TIME: 07/22/2015, 1459
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 82, DATE/TIME: 08/24/2015, 1032
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 125, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111 TELEGRAPH Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

3 - Seized, Weapon (Non-Firearm)

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) TASER BRAND ELECTRO-MUSCULAR DISRUPTION
DEVICE, MODEL X2, BLACK IN COLOR, SERIAL NUMBER X29001012, INCLUDING 1

CHARGED CARTRIDGE, 1 SPENT CARTRIDGE, LEAD WIRES AND TWO SPENT BARBS.
SEIZED BY: M LESINSKI

BIN #: 13, DB GUN LOCKER, DATE/TIME RECOVERED: 04/16/2015, 0900

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

                AGENCY          :  MI8202000
                INCIDENT NUMBER :  020-0000789-2015
                DATE OF REPORT  :  08/15/2017 AT 13:52
STREET ADDRESS: 32409 FORT Road
COUNTY: Wayne, CITY/TOWNSHIP: Rockwood, STATE: Michigan, ZIP: 48173
AT OR NEAR: ROCKWOOD PD
ADDITIONAL LOCATION INFO: RECEIVED FROM D/SGT STEVEN MERCURE

REVIEW DATE/TIME: 04/24/2015, 0933 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 15, DATE/TIME: 04/24/2015, 0933
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  3          HST VAULT - GUNS

JOURNAL ENTRY: 16, DATE/TIME: 04/24/2015, 0933
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #3 & #7 FROM P/L #10 TO P/R (PLACED IN GUN SHELF
AS ITEMS AR E TASERS).

JOURNAL ENTRY: 49, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 3          HST VAULT - GUNS
To :  13         DB GUN LOCKER

JOURNAL ENTRY: 50, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Placed in property room
INFORMATION: BIN CORRECTED TO DB GUNS

JOURNAL ENTRY: 53, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 75, DATE/TIME: 07/23/2015, 0758
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 77, DATE/TIME: 07/23/2015, 1027
USER: CYNTHIA FELLNER

PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I'S #3 & #4 PER D/SGT. PATRICK ROTI'S REQUEST TO
RELEASE THIS DAT E.  P/I#3 TO BE RELEASED TO CHIEF ROWE, ROCKWOOD PD AND
P/I#7 TO BE RELEASED TO CHIEF WILLIAMS, GIBRALTAR PD BY D/SGT. C. FELLNER
THIS DATE.

JOURNAL ENTRY: 79, DATE/TIME: 07/23/2015, 1448
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 07/23/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: D/SGT. STEVE MERCURE
```

```
                AUTOMATED INCIDENT CAPTURE SYSTEM
                  INCIDENT PROPERTY REPORT - FULL

         AGENCY        :  MI8202000
         INCIDENT NUMBER :  020-0000789-2015
         DATE OF REPORT  :  08/15/2017 AT 13:52
   LOCALE: ROCKWOOD POLICE DEPARTMENT (CHIEF ROWE)
   STREET ADDRESS: 32409  FORT  Street
   CITY: ROCKWOOD, STATE: Michigan, ZIP: 48173
```

4 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) MEMOREX BRAND 700MB CD-R CONTAINING

ORIGINAL DOWNLOAD OF TASER LOG FROM GIBRALTAR POLICE DEPARTMENT.
SEIZED BY: M LESINSKI

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015, 1400

STREET ADDRESS: 29450  MUNRO  Street
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter, STATE: Michigan, ZIP: 48173
AT OR NEAR: GPD
ADDITIONAL LOCATION INFO: RECEIVED FROM CHIEF LARRY WILLIAMS

REVIEW DATE/TIME: 04/24/2015, 0931 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 9, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14      DB SHELF

JOURNAL ENTRY: 10, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #1, #2, #4, #5 & #22 FROM P/L #9 TO P/R.

JOURNAL ENTRY: 57, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 83, DATE/TIME: 08/24/2015, 1033
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 126, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111  TELEGRAPH  Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

5 - Manufactured/Trace Evidence, Evidence

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

             AGENCY         :  MI8202000
             INCIDENT NUMBER :  020-0000789-2015
             DATE OF REPORT  :  08/15/2017 AT 13:52
CURRENT STATUS: Released
```

MISCELLANEOUS INFORMATION: ONE (1) MEMOREX BRAND 700MB DVD+R CONTAINING 911
CALL FROM 4/16/15 REGARDING THIS INCIDENT.
SEIZED BY: M LESINSKI

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015, 1400

STREET ADDRESS: 29450 MUNRO Street
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter, STATE: Michigan, ZIP: 48173
AT OR NEAR: GPD
ADDITIONAL LOCATION INFO: RECEIVED FROM CHIEF LARRY WILLIAMS

REVIEW DATE/TIME: 04/24/2015, 0931 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 11, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14      DB SHELF

JOURNAL ENTRY: 12, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER

PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #1, #2, #4, #5 & #22 FROM P/L #9 TO P/R.

JOURNAL ENTRY: 58, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 84, DATE/TIME: 08/24/2015, 1033
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 127, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111 TELEGRAPH Road

CITY: TAYLOR, STATE: Michigan, ZIP: 48180

6 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE CD DISK LABELED "WCMEO PHOTOS - 15-4606."
SEIZED BY: TIMOTHY HOLME

AUTOMATED INCIDENT CAPTURE SYSTEM
INCIDENT PROPERTY REPORT - FULL

AGENCY          : MI8202000
INCIDENT NUMBER : 020-0000789-2015
DATE OF REPORT  : 08/15/2017 AT 13:52
BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/20/2015, 1130

STREET ADDRESS:     1300   E            WARREN  AVE
COUNTY: Wayne, CITY/TOWNSHIP: Detroit, STATE: Michigan, ZIP:     4-8207
ADDITIONAL LOCATION INFO:                                        WCMEO

REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 31, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14      DB SHELF

JOURNAL ENTRY: 32, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

JOURNAL ENTRY: 45, DATE/TIME: 06/22/2015, 0921
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 14      DB SHELF
To : 37      Intake Locker #10

JOURNAL ENTRY: 46, DATE/TIME: 06/22/2015, 0921
USER: CYNTHIA FELLNER
PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I #6 AND TOT DIRECTLY TO D/SGT. PATRICK ROTI.

JOURNAL ENTRY: 47, DATE/TIME: 06/22/2015, 1042
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 37      Intake Locker #10
To : 14      DB SHELF

JOURNAL ENTRY: 48, DATE/TIME: 06/22/2015, 1042

USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I #6 DIRECTLY FROM D/SGT. PATRICK ROTI.

JOURNAL ENTRY: 59, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 85, DATE/TIME: 08/24/2015, 1033
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 128, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

AUTOMATED INCIDENT CAPTURE SYSTEM
INCIDENT PROPERTY REPORT - FULL

AGENCY          : MI8202000
INCIDENT NUMBER : 020-0000789-2015
DATE OF REPORT  : 08/15/2017 AT 13:52
DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES

STREET ADDRESS: 12111  TELEGRAPH  Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

7 - Seized, Weapon (Non-Firearm)

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) TASER BRAND ELECTRO-MUSCULAR DEVICE MODEL
X-26 SERIAL NUMBER X00282930 YELLOW/BLACK IN COLOR.
SEIZED BY: M LESINSKI

BIN #: 13, DB GUN LOCKER, DATE/TIME RECOVERED: 04/16/2015, 1400

STREET ADDRESS:     14680              GIBRALTAR   RD
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter, STATE: Michigan, ZIP:      4-8173
AT OR NEAR:                                                          GPD
ADDITIONAL LOCATION INFO:                 RECEIVED FROM CHIEF LARRY WILLIAMS

REVIEW DATE/TIME: 04/24/2015, 0933 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 17, DATE/TIME: 04/24/2015, 0933
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number

INFORMATION: Bin#, Changed From :
To : 3       HST VAULT - GUNS

JOURNAL ENTRY: 18, DATE/TIME: 04/24/2015, 0933
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #3 & #7 FROM P/L #10 TO P/R (PLACED IN GUN SHELF
AS ITEMS AR E TASERS).

JOURNAL ENTRY: 51, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 3      HST VAULT - GUNS
To : 13      DB GUN LOCKER

JOURNAL ENTRY: 52, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Placed in property room
INFORMATION: BIN CORRECTED TO DB GUNS

JOURNAL ENTRY: 54, DATE/TIME: 07/20/2015, 1807
USER: DENISE POWELL
PROP STATUS: Audit

INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 76, DATE/TIME: 07/23/2015, 0758
USER: PATRICK ROTI

```
                   AUTOMATED INCIDENT CAPTURE SYSTEM
                   INCIDENT PROPERTY REPORT - FULL

           AGENCY          :  MI8202000
           INCIDENT NUMBER :  020-0000789-2015
           DATE OF REPORT  :  08/15/2017 AT 13:52
   PROP STATUS: Authorized to release
   INFORMATION: Authorized By : ROTI,PATRICK
```

JOURNAL ENTRY: 78, DATE/TIME: 07/23/2015, 1027
USER: CYNTHIA FELLNER
PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I'S #3 & #4 PER D/SGT. PATRICK ROTI'S REQUEST TO
RELEASE THIS DAT E.  P/I#3 TO BE RELEASED TO CHIEF ROWE, ROCKWOOD PD AND
P/I#7 TO BE RELEASED TO CHIEF WILLIAMS, GIBRALTAR PD BY D/SGT. C. FELLNER
THIS DATE.

JOURNAL ENTRY: 80, DATE/TIME: 07/23/2015, 1451
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 07/23/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: CHIEF LARRY WILLIAMS

LOCALE: GIBRALTAR POLICE DEPARTMENT
STREET ADDRESS: 29450  MUNRO  Avenue
CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

8 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: (4) FOUR DVD'S CONTAINING THE RECORDED
INTERVIEW(S) OF ANGELO BENETEAU CONDUCTED WITH D/SGT SUNSHINE PONZETTI ON
4-16-15. THE DVD'S ARE LABELED #1, #2, #3, AND #4.
SEIZED BY: DSGT ROTI
DESCRP : (4) FOUR DVD'S CONTAINING THE RECORDED INTERVIEW(S) OF ANGELO
BENETEAU CONDUCTED WITH D/SGT SUNSHINE PONZETTI ON 4-16-15. THE DVD'S ARE
LABELED #1, #2, #3, AND #4.

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS: 12111  TELEGRAPH  Road
COUNTY: Wayne, CITY/TOWNSHIP: Taylor, ZIP: 48180
ADDITIONAL LOCATION INFO: RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 33, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14       DB SHELF

JOURNAL ENTRY: 34, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

JOURNAL ENTRY: 60, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

              AGENCY         :  MI8202000
              INCIDENT NUMBER :  020-0000789-2015
              DATE OF REPORT  :  08/15/2017 AT 13:52
      PROP STATUS: Audit
      INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

      JOURNAL ENTRY: 86, DATE/TIME: 08/24/2015, 1034
      USER: PATRICK ROTI
      PROP STATUS: Authorized to release
      INFORMATION: Authorized By : ROTI,PATRICK

      JOURNAL ENTRY: 129, DATE/TIME: 09/26/2015, 1436
      USER: CYNTHIA FELLNER

      PROP STATUS: Released
      INFORMATION: Disposed By : FELLNER,CYNTHIA

      DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
      DISPOSED BY: FELLNER,CYNTHIA
      RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
      LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
      STREET ADDRESS: 12111  TELEGRAPH  Road
      CITY: TAYLOR, STATE: Michigan, ZIP: 48180

 9 - Manufactured/Trace Evidence, Evidence

      CURRENT STATUS: Released

      MISCELLANEOUS INFORMATION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF
      ALICE BENETEAU WITH D/SGT SUNSHINE PONZETTI AT THEMSP 2ND DISTRICT
      HEADQUATERS ON 4-16-15.
      SEIZED BY: DSGT ROTI
      DESCRP : (1) ONE DVD CONTAINING THE RECORDED INTERVIEW OF ALICE BENETEAU WITH
      D/SGT SUNSHINE PONZETTI AT THE MSP 2ND DISTRICT HEADQUATERS ON 4-16-15.

      BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

      STREET ADDRESS: 12111  TELEGRAPH  Road
      COUNTY: Wayne, CITY/TOWNSHIP: Taylor, ZIP: 48180
      ADDITIONAL LOCATION INFO: RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

      REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

      JOURNAL ENTRY: 35, DATE/TIME: 04/24/2015, 0941
      USER: CYNTHIA FELLNER
      PROP STATUS: Changed bin or lab number
      INFORMATION: Bin#, Changed From :
      To : 14       DB SHELF

      JOURNAL ENTRY: 36, DATE/TIME: 04/24/2015, 0941
      USER: CYNTHIA FELLNER
      PROP STATUS: Placed in property room
      INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

      JOURNAL ENTRY: 61, DATE/TIME: 07/22/2015, 1500
      USER: DENISE POWELL
      PROP STATUS: Audit
      INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

      JOURNAL ENTRY: 87, DATE/TIME: 08/24/2015, 1034
```

```
          AUTOMATED INCIDENT CAPTURE SYSTEM
          INCIDENT PROPERTY REPORT - FULL

      AGENCY         :  MI8202000
      INCIDENT NUMBER :  020-0000789-2015
      DATE OF REPORT  :  08/15/2017 AT 13:52
```

USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 130, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111  TELEGRAPH  Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

10 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH
OFFICER GARY ROBINSON OF GIBRALTAR PD. THE INTERVIEW WAS CONDUCTED AT THE MSP
2ND DISTRICT HEADQUARTERS.

SEIZED BY: DSGT ROTI
DESCRP : (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER GARY
ROBINSON OF GIBRALTAR PD. THE INTERVIEW WAS CONDUCTED AT THE MSP 2ND DISTRICT
HEADQUARTERS.

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/20/2015

STREET ADDRESS: 12111  TELEGRAPH  Road
COUNTY: Wayne, CITY/TOWNSHIP: Taylor, ZIP: 48180
ADDITIONAL LOCATION INFO: RECORDED AT MSP 2ND DISTRICT HEADQUARTERS

REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 37, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14      DB SHELF

JOURNAL ENTRY: 38, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

JOURNAL ENTRY: 62, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 88, DATE/TIME: 08/24/2015, 1035
USER: PATRICK ROTI
PROP STATUS: Authorized to release

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

             AGENCY          :  MI8202000
             INCIDENT NUMBER :  020-0000789-2015
             DATE OF REPORT  :  08/15/2017 AT 13:52
    INFORMATION: Authorized By : ROTI,PATRICK

    JOURNAL ENTRY: 131, DATE/TIME: 09/26/2015, 1436
    USER: CYNTHIA FELLNER
    PROP STATUS: Released
    INFORMATION: Disposed By : FELLNER,CYNTHIA

    DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
    DISPOSED BY: FELLNER,CYNTHIA
    RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
    LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
    STREET ADDRESS: 12111  TELEGRAPH  Road
    CITY: TAYLOR, STATE: Michigan, ZIP: 48180
```

11 - Manufactured/Trace Evidence, Evidence

```
    CURRENT STATUS: Destroyed

    MISCELLANEOUS INFORMATION: ONE HAIR TAKEN OFF OF THE SUSPECT BY THE WAYNE CO
    MEDICAL EXAMINER DURING THE AUTOPSY THAT WAS CONDUCTED ON 4-17-15. THE HAIR
    WAS COLLECTED AND PACKAGED BY THE ME'S OFFICE THEN TURNED OVER TO MSP.
    SEIZED BY: DSGT ROTI
    DESCRP : ONE HAIR TAKEN OFF OF THE SUSPECT BY THE WAYNE CO MEDICAL EXAMINER
    DURING THE AUTOPSY THAT WAS CONDUCTED ON 4-17-15. THE HAIR WAS COLLECTED AND
    PACKAGED BY THE ME'S OFFICE THEN TURNED OVER TO MSP.

    BIN #: 24, PROPERTY TO BE DESTROYED, DATE/TIME RECOVERED: 04/20/2015

    STREET ADDRESS:
    ADDITIONAL LOCATION INFO: WAYNE CO MEDICAL EXAMINER'S OFFICE.

    REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

    JOURNAL ENTRY: 39, DATE/TIME: 04/24/2015, 0941
    USER: CYNTHIA FELLNER
    PROP STATUS: Changed bin or lab number
    INFORMATION: Bin#, Changed From :
    To :  14       DB SHELF

    JOURNAL ENTRY: 40, DATE/TIME: 04/24/2015, 0941
    USER: CYNTHIA FELLNER
    PROP STATUS: Placed in property room
    INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

    JOURNAL ENTRY: 63, DATE/TIME: 07/22/2015, 1500
    USER: DENISE POWELL
    PROP STATUS: Audit
    INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

    JOURNAL ENTRY: 89, DATE/TIME: 08/24/2015, 1035
    USER: PATRICK ROTI
    PROP STATUS: Authorize to destroy
    INFORMATION: Authorized By : ROTI,PATRICK

    JOURNAL ENTRY: 118, DATE/TIME: 09/26/2015, 1404
    USER: CYNTHIA FELLNER
    PROP STATUS: Changed bin or lab number
```

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

                AGENCY           : MI8202000
                INCIDENT NUMBER  : 020-0000789-2015
                DATE OF REPORT   : 08/15/2017 AT 13:52
INFORMATION: Bin#, Changed From : 14          DB SHELF
To : 24        PROPERTY TO BE DESTROYED
```

JOURNAL ENTRY: 119, DATE/TIME: 09/26/2015, 1404
USER: CYNTHIA FELLNER

PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I'S #11, #17-#18 FROM P/R DB SHELF, PLACED IN PENDING
PROPERTY DE STRUCTION BIN (IN P/R) FOR DESTRUCTION ON 10/01/2015 AT MSP
MONROE POST BY D/F/LT. MARY KAPP AND F/LT. TONY CUEVAS

JOURNAL ENTRY: 134, DATE/TIME: 10/20/2015, 1019
USER: MARY KAPP
PROP STATUS: Destroyed
INFORMATION: Disposed By : KAPP,MARY

DISPOSED ON: 10/20/2015, AUTHORIZED BY: ROTI,PATRICK
WITNESS: WOLF,JAMES, DISPOSED BY: KAPP,MARY
LOCALE: BURNED AT GERDAU STEEL
STREET ADDRESS: 3350  E  FRONT  Street
CITY: MONROE, STATE: Michigan, ZIP: 48161

12 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH
OFFICER MITCHELL OF ROCKWOOD PD AT MSP 2ND DISTRICT HEADQUARTERS. RECORDED ON
4-20-15 AT APPROXIMATELY 1430 HRS

SEIZED BY: DSGT ROTI
DESCRP : (1) ONE DVD CONTAINING THE RECORDED INTERVIEW WITH OFFICER MITCHELL
OF ROCKWOOD PD AT MSP 2ND DISTRICT HEADQUARTERS. RECORDED ON 4-20-15 AT
APPROXIMATELY 1430 HRS

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/20/2015

STREET ADDRESS: 12111  TELEGRAPH  Road
COUNTY: Wayne, CITY/TOWNSHIP: Taylor, ZIP: 48180
ADDITIONAL LOCATION INFO: 2ND DISTRICT HEADQUARTERS

REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 41, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14       DB SHELF

JOURNAL ENTRY: 42, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

JOURNAL ENTRY: 64, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit

AUTOMATED INCIDENT CAPTURE SYSTEM
INCIDENT PROPERTY REPORT - FULL

```
AGENCY          :  MI8202000
INCIDENT NUMBER :  020-0000789-2015
DATE OF REPORT  :  08/15/2017 AT 13:52
```
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 90, DATE/TIME: 08/24/2015, 1036
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 132, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA

DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111 TELEGRAPH Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180

13 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP
AND BOTTOM). THE PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH
AREA, POSSIBLY FECAL MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH COLORED
CIRCULAR STAIN ON THE BACK NEAR THE BOTTOM OF THE SHIRT, POSSIBLY FECAL
MATTER. THE CLOTHING WAS COLLECTED BY OAKWOOD SOUTH SHORE HOSPITAL WHEN THE
VICTIM WAS ADMITTED INTO THE ER ON 4-16-15.
SEIZED BY: DSGT ROTI
DESCRP : A LIGHT BLUE COLORED PAIR OF "SCRUBS," (BOTH TOP AND BOTTOM). THE
PANTS APPEARED TO HAVE A STAIN/ MARK IN/ NEAR THE CROTCH AREA, POSSIBLY FECAL
MATTER OR BLOOD. THE SHIRT HAD A SMALL BROWNISH COLORED CIRCULAR STAIN ON THE
BACK NEAR THE BOTTOM OF THE SHIRT, POSSIBLY FECAL MATTER.

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS:
COUNTY: Wayne, CITY/TOWNSHIP: Trenton,
ADDITIONAL LOCATION INFO: OBTAINED FROM OAKWOOD SOUTH SHORE HOSPITAL WHILE I
WAS CONDUCTING MY INTERVIEW WITH CHRISTINA BENETEAU.

REVIEW DATE/TIME: 04/24/2015, 0941 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 43, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14      DB SHELF

JOURNAL ENTRY: 44, DATE/TIME: 04/24/2015, 0941
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #6, #8, #9, #10, #11 & #12 FROM P/L #6 TO P/R.

JOURNAL ENTRY: 65, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL

```
                AUTOMATED INCIDENT CAPTURE SYSTEM
                INCIDENT PROPERTY REPORT - FULL

          AGENCY           :  MI8202000
          INCIDENT NUMBER  :  020-0000789-2015
          DATE OF REPORT   :  08/15/2017 AT 13:52
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 91, DATE/TIME: 08/24/2015, 1040
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 104, DATE/TIME: 08/24/2015, 1204
USER: DENISE POWELL

PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 111, DATE/TIME: 08/24/2015, 1310
USER: PATRICK ROTI
PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: COMPLAINANT/ VICTIM RESIDENCE
STREET ADDRESS: 14680 GIBRALTAR  Road APT  16
CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

14 - Seized, Miscellaneous

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: SUSPECTED PINK AND YELLOW CHADS FROM TASER
DEPLOYMENT
SEIZED BY: KATHLEEN LEWIS

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS:       14680              GIBRALTAR  APT     16
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
ADDITIONAL LOCATION INFO:                  SOUTHEAST BEDROOM FLOOR

REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 19, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 7        INTAKE LOCKER 1
To :  14      DB SHELF

JOURNAL ENTRY: 20, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.

JOURNAL ENTRY: 66, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER
```

AUTOMATED INCIDENT CAPTURE SYSTEM
INCIDENT PROPERTY REPORT - FULL

AGENCY               : MI8202000
INCIDENT NUMBER : 020-0000789-2015
DATE OF REPORT  : 08/15/2017 AT 13:52
JOURNAL ENTRY: 92, DATE/TIME: 08/24/2015, 1040

USER: PATRICK ROTI
PROP STATUS: Authorize to destroy
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 101, DATE/TIME: 08/24/2015, 1055
USER: PATRICK ROTI
PROP STATUS: Authorize to destroy
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 102, DATE/TIME: 08/24/2015, 1056
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 105, DATE/TIME: 08/24/2015, 1204
USER: DENISE POWELL
PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 112, DATE/TIME: 08/24/2015, 1310
USER: PATRICK ROTI
PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: GIBRALTAR PD
STREET ADDRESS:

LOG INFORMATION
---------------
DATE/TIME: 08/24/2015, 1055  USER: PATRICK ROTI

APARTMENT NUMBER Changed From: 16  To:     16
ADDRESS NUMBER Changed From: 14680  To:    14680
STREET Changed From: GIBRALTAR  To:           GIBRALTAR
ADDITIONAL LOCATION INFO CHANGED:
FROM: SOUTHEAST BEDROOM FLOOR
TO  :                    SOUTHEAST BEDROOM FLOOR


15 - Seized, Miscellaneous

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: SUSPECTED TASER PRONG
SEIZED BY: KATHLEEN LEWIS

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS: 14680 GIBRALTAR APT 16
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
ADDITIONAL LOCATION INFO: SOUTHEAST BEDROOM FLOOR

REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER

```
            AUTOMATED INCIDENT CAPTURE SYSTEM
            INCIDENT PROPERTY REPORT - FULL

          AGENCY          :  MI8202000
          INCIDENT NUMBER :  020-0000789-2015
          DATE OF REPORT  :  08/15/2017 AT 13:52
```

JOURNAL ENTRY: 21, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 7        INTAKE LOCKER 1
To : 14      DB SHELF

JOURNAL ENTRY: 22, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.

JOURNAL ENTRY: 67, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 93, DATE/TIME: 08/24/2015, 1041
USER: PATRICK ROTI
PROP STATUS: Authorize to destroy
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 103, DATE/TIME: 08/24/2015, 1057
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 106, DATE/TIME: 08/24/2015, 1204
USER: DENISE POWELL
PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 113, DATE/TIME: 08/24/2015, 1311
USER: PATRICK ROTI
PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: GIBRALTAR PD

STREET ADDRESS:

16 - Seized, Miscellaneous

  CURRENT STATUS: Released

  MISCELLANEOUS INFORMATION: BEDDING FROM DOUBLE BED IN SOUTHEAST BEDROOM
  SEIZED BY: KATHLEEN LEWIS

  BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

  STREET ADDRESS: 14680  GIBRALTAR  APT  16
  COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
  ADDITIONAL LOCATION INFO: SOUTHEAST BEDROOM - DOUBLE BED

  REVIEW DATE/TIME: 04/24/2015, 0923 REVIEWER: CYNTHIA FELLNER
```

```
              AUTOMATED INCIDENT CAPTURE SYSTEM
              INCIDENT PROPERTY REPORT - FULL

        AGENCY          :  MI8202000
        INCIDENT NUMBER :  020-0000789-2015
        DATE OF REPORT  :  08/15/2017 AT 13:52
```

JOURNAL ENTRY: 1, DATE/TIME: 04/24/2015, 0923
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 7        INTAKE LOCKER 1
To : 14        DB SHELF

JOURNAL ENTRY: 2, DATE/TIME: 04/24/2015, 0923
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #16 & #21 IN P/R, (EXTRA LARGE SIZE BAGS-PLACED
ON TOP SHELF ).

JOURNAL ENTRY: 68, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 94, DATE/TIME: 08/24/2015, 1041
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 107, DATE/TIME: 08/24/2015, 1204
USER: DENISE POWELL
PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 114, DATE/TIME: 08/24/2015, 1312
USER: PATRICK ROTI

PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: COMPLAINANT/ VICTIM RESIDENCE
STREET ADDRESS: 14680  GIBRALTAR RD  APT  16
CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

17 - Seized, Miscellaneous

CURRENT STATUS: Destroyed

MISCELLANEOUS INFORMATION: SUSPECTED DRYWALL DUST PAINT/PAINT AND FINGERNAIL
FROM FLOOR
SEIZED BY: KATHLEEN LEWIS

BIN #: 24, PROPERTY TO BE DESTROYED, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS: 14680  GIBRALTAR  APT  16
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
ADDITIONAL LOCATION INFO: SOUTHEAST BEDROOM FOUND ON THE FLOOR UNDER WHAT
APPEARED TO BE FRESH HOLES IN THE WEST WALL OF THE BEDROOM.

REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

                    AGENCY         :  MI8202000
                    INCIDENT NUMBER :  020-0000789-2015
                    DATE OF REPORT  :  08/15/2017 AT 13:52
JOURNAL ENTRY: 23, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To : 14       DB SHELF

JOURNAL ENTRY: 24, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.

JOURNAL ENTRY: 69, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 95, DATE/TIME: 08/24/2015, 1042
USER: PATRICK ROTI
PROP STATUS: Authorize to destroy
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 120, DATE/TIME: 09/26/2015, 1404
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 14       DB SHELF
To : 24       PROPERTY TO BE DESTROYED

JOURNAL ENTRY: 121, DATE/TIME: 09/26/2015, 1404
USER: CYNTHIA FELLNER
PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I'S #11, #17-#18 FROM P/R DB SHELF, PLACED IN PENDING
PROPERTY DE STRUCTION BIN (IN P/R) FOR DESTRUCTION ON 10/01/2015 AT MSP
MONROE POST BY D/F/LT. MARY KAPP AND F/LT. TONY CUEVAS

JOURNAL ENTRY: 135, DATE/TIME: 10/20/2015, 1019
USER: MARY KAPP
PROP STATUS: Destroyed
INFORMATION: Disposed By : KAPP,MARY

DISPOSED ON: 10/20/2015, AUTHORIZED BY: ROTI,PATRICK
WITNESS: WOLF,JAMES, DISPOSED BY: KAPP,MARY
LOCALE: BURNED AT GERDAU STEEL
STREET ADDRESS: 3350  E  FRONT  Street
CITY: MONROE, STATE: Michigan, ZIP: 48161

18 - Seized, Miscellaneous

CURRENT STATUS: Destroyed

MISCELLANEOUS INFORMATION: KNOWN SAMPLES OF DRYWALL AND PAINT FROM SOUTHEAST
BEDROM WALL.
SEIZED BY: KATHLEEN LEWIS

BIN #: 24, PROPERTY TO BE DESTROYED, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS: 14680  GIBRALTAR  APT  16
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
```

```
              AUTOMATED INCIDENT CAPTURE SYSTEM
              INCIDENT PROPERTY REPORT - FULL

         AGENCY          :  MI8202000
         INCIDENT NUMBER :  020-0000789-2015
         DATE OF REPORT  :  08/15/2017 AT 13:52
ADDITIONAL LOCATION INFO: SOUTHEAST BEDROOM TAKEN FROM ONE OF THE HOLES IN
THE WALL.


REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 25, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14        DB SHELF

JOURNAL ENTRY: 26, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.

JOURNAL ENTRY: 70, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 96, DATE/TIME: 08/24/2015, 1042
USER: PATRICK ROTI
PROP STATUS: Authorize to destroy
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 122, DATE/TIME: 09/26/2015, 1404
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 14        DB SHELF
To :  24        PROPERTY TO BE DESTROYED

JOURNAL ENTRY: 123, DATE/TIME: 09/26/2015, 1404
USER: CYNTHIA FELLNER

PROP STATUS: Temp. removed from prpty room
INFORMATION: REMOVED P/I'S #11, #17-#18 FROM P/R DB SHELF, PLACED IN PENDING
PROPERTY DE STRUCTION BIN (IN P/R) FOR DESTRUCTION ON 10/01/2015 AT MSP
MONROE POST BY D/F/LT. MARY KAPP AND F/LT. TONY CUEVAS

JOURNAL ENTRY: 136, DATE/TIME: 10/20/2015, 1019
USER: MARY KAPP
PROP STATUS: Destroyed
INFORMATION: Disposed By : KAPP,MARY

DISPOSED ON: 10/20/2015, AUTHORIZED BY: ROTI,PATRICK
WITNESS: WOLF,JAMES, DISPOSED BY: KAPP,MARY
LOCALE: BURNED AT GERDAU STEEL
STREET ADDRESS: 3350  E  FRONT  Street
CITY: MONROE, STATE: Michigan, ZIP: 48161

19 - Seized, Miscellaneous

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ARTICLES OF MAIL SHOWING RESIDENCY FOR THE
```

```
              AUTOMATED INCIDENT CAPTURE SYSTEM
              INCIDENT PROPERTY REPORT - FULL

          AGENCY           :  MI8202000
          INCIDENT NUMBER :  020-0000789-2015
          DATE OF REPORT  :  08/15/2017 AT 13:52
```

APARTMENT.
SEIZED BY: KATHLEEN LEWIS

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

STREET ADDRESS: 14680 GIBRALTAR APT 16
COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
ADDITIONAL LOCATION INFO: KITCHEN COUNTER

REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 27, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From : 7          INTAKE LOCKER 1
To : 14       DB SHELF

JOURNAL ENTRY: 28, DATE/TIME: 04/24/2015, 0937
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.

JOURNAL ENTRY: 71, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 97, DATE/TIME: 08/24/2015, 1043
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 108, DATE/TIME: 08/24/2015, 1204
USER: DENISE POWELL
PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 115, DATE/TIME: 08/24/2015, 1313
USER: PATRICK ROTI
PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: COMPLAINANT/ VICTIM RESIDENCE
STREET ADDRESS: 14680 GIBRATLAR Road APT 16
CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

20 - Seized, Miscellaneous

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: BROKEN POTTERY/GLASS ITEM (CHATZKI)
SEIZED BY: KATHLEEN LEWIS

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL

               AGENCY        :  MI8202000
               INCIDENT NUMBER :  020-0000789-2015
               DATE OF REPORT  :  08/15/2017 AT 13:52
    STREET ADDRESS: 14680 GIBRALTAR APT  16
    COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
    ADDITIONAL LOCATION INFO: FOUND BROKEN IN HALLWAY ADJACENT TO THE TWO
    BEDROOMS

    REVIEW DATE/TIME: 04/24/2015, 0937 REVIEWER: CYNTHIA FELLNER


    JOURNAL ENTRY: 29, DATE/TIME: 04/24/2015, 0937
    USER: CYNTHIA FELLNER
    PROP STATUS: Changed bin or lab number
    INFORMATION: Bin#, Changed From : 7         INTAKE LOCKER 1
    To :  14       DB SHELF

    JOURNAL ENTRY: 30, DATE/TIME: 04/24/2015, 0937
    USER: CYNTHIA FELLNER
    PROP STATUS: Placed in property room

    INFORMATION: RECEIVED P/I'S #14, #15, #17, #18, #19 & #20 FROM P/L #2 TO P/R.


    JOURNAL ENTRY: 72, DATE/TIME: 07/22/2015, 1500
    USER: DENISE POWELL
    PROP STATUS: Audit
    INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

    JOURNAL ENTRY: 98, DATE/TIME: 08/24/2015, 1044
    USER: PATRICK ROTI
    PROP STATUS: Authorized to release
    INFORMATION: Authorized By : ROTI,PATRICK

    JOURNAL ENTRY: 109, DATE/TIME: 08/24/2015, 1205
    USER: DENISE POWELL
    PROP STATUS: Temp. removed from prpty room
    INFORMATION: TOT D/SGT ROTI

    JOURNAL ENTRY: 116, DATE/TIME: 08/24/2015, 1314
    USER: PATRICK ROTI
    PROP STATUS: Released
    INFORMATION: Disposed By : ROTI,PATRICK

    DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK

    DISPOSED BY: ROTI,PATRICK
    LOCALE: COMPLAINANT/ VICTIM RESIDENCE
    STREET ADDRESS: 14680 GIBRALTAR Road APT  16
    CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

21 - Seized, Miscellaneous

    CURRENT STATUS: Released

    MISCELLANEOUS INFORMATION: BEDDING FROM FUTON IN LIVINGROOM
    SEIZED BY: KATHLEEN LEWIS

    BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/16/2015

    STREET ADDRESS: 14680 GIBRALTAR APT  16
    COUNTY: Wayne, CITY/TOWNSHIP: Gibralter,
```

```
                AUTOMATED INCIDENT CAPTURE SYSTEM
                INCIDENT PROPERTY REPORT - FULL

        AGENCY          :  MI8202000
        INCIDENT NUMBER :  020-0000789-2015
        DATE OF REPORT  :  08/15/2017 AT 13:52
ADDITIONAL LOCATION INFO: ON FUTON IN LIVINGROOM
```

REVIEW DATE/TIME: 04/24/2015, 0924 REVIEWER: CYNTHIA FELLNER

JOURNAL ENTRY: 3, DATE/TIME: 04/24/2015, 0924
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number

INFORMATION: Bin#, Changed From : 7      INTAKE LOCKER 1
To : 14     DB SHELF

JOURNAL ENTRY: 4, DATE/TIME: 04/24/2015, 0924
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #16 & #21 IN P/R, (EXTRA LARGE SIZE BAGS-PLACED
ON TOP SHELF ).

JOURNAL ENTRY: 73, DATE/TIME: 07/22/2015, 1500
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER

JOURNAL ENTRY: 99, DATE/TIME: 08/24/2015, 1044
USER: PATRICK ROTI
PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK

JOURNAL ENTRY: 110, DATE/TIME: 08/24/2015, 1205
USER: DENISE POWELL
PROP STATUS: Temp. removed from prpty room
INFORMATION: TOT D/SGT ROTI

JOURNAL ENTRY: 117, DATE/TIME: 08/24/2015, 1315
USER: PATRICK ROTI
PROP STATUS: Released
INFORMATION: Disposed By : ROTI,PATRICK

DISPOSED ON: 08/24/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: ROTI,PATRICK
LOCALE: COMPLAINANT/ VICTIM RESIDENCE
STREET ADDRESS: 14680  GIBRALTAR  Road  APT  16
CITY: GIBRALTAR, STATE: Michigan, ZIP: 48173

22 - Manufactured/Trace Evidence, Evidence

CURRENT STATUS: Released

MISCELLANEOUS INFORMATION: ONE (1) LEXAR BRAND 32 GB FLASH DRIVE, BLACK IN
COLOR
SEIZED BY: M LESINSKI

BIN #: 14, DB SHELF, DATE/TIME RECOVERED: 04/17/2015, 1000

STREET ADDRESS: 2872  W  JEFFERSON  Street
COUNTY: Wayne, CITY/TOWNSHIP: Trenton, STATE: Michigan, ZIP: 48183

AT OR NEAR: TRENTON PD

103

```
                    AUTOMATED INCIDENT CAPTURE SYSTEM
                    INCIDENT PROPERTY REPORT - FULL


            AGENCY          :  MI8202000
            INCIDENT NUMBER :  020-0000789-2015
            DATE OF REPORT  :  08/15/2017 AT 13:52
ADDITIONAL LOCATION INFO: RECEIVED FROM D/SGT. MIKE OAKLEY


REVIEW DATE/TIME: 04/24/2015, 0931 REVIEWER: CYNTHIA FELLNER


JOURNAL ENTRY: 13, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Changed bin or lab number
INFORMATION: Bin#, Changed From :
To :  14       DB SHELF


JOURNAL ENTRY: 14, DATE/TIME: 04/24/2015, 0931
USER: CYNTHIA FELLNER
PROP STATUS: Placed in property room
INFORMATION: RECEIVED P/I'S #1, #2, #4, #5 & #22 FROM P/L #9 TO P/R.


JOURNAL ENTRY: 74, DATE/TIME: 07/22/2015, 1501
USER: DENISE POWELL
PROP STATUS: Audit
INFORMATION: AUDIT BY D/F/LT POWELL AND D/SGT FELLNER


JOURNAL ENTRY: 100, DATE/TIME: 08/24/2015, 1045
USER: PATRICK ROTI

PROP STATUS: Authorized to release
INFORMATION: Authorized By : ROTI,PATRICK


JOURNAL ENTRY: 133, DATE/TIME: 09/26/2015, 1436
USER: CYNTHIA FELLNER
PROP STATUS: Released
INFORMATION: Disposed By : FELLNER,CYNTHIA


DISPOSED ON: 09/26/2015, AUTHORIZED BY: ROTI,PATRICK
DISPOSED BY: FELLNER,CYNTHIA
RECEIVED BY: MSP SIS AUDIO/VIDEO FILES
LOCALE: RELEASED TO MSP SECOND DIST HQ SIS A/V FILES
STREET ADDRESS: 12111  TELEGRAPH  Road
CITY: TAYLOR, STATE: Michigan, ZIP: 48180
                              *****


    Total Number Of Property Items:    22
```

103